In the Matter of HARRY J. EVERS, Petitioner, against DANIEL D. FLANAGAN et al., Respondents.

Supreme Court, Special Term, Queens County, December 7, 1945.

*Burke, Morrison & Green* for petitioner.

*Myers & Guerin* for Daniel D. Flanagan, respondent, on original argument.

*Frank D. O'Connor* for Daniel D. Flanagan, respondent, on reargument.

*Elvin N. Edwards* for State Liquor Authority, respondent.

STODDART, J. This is an application under sections 123 and 124 of the Alcoholic Beverage Control Law for an order enjoining the respondent Daniel D. Flanagan from operating a retail liquor store for the sale of liquor for consumption off the premises at No. 30–08 33d Street, Astoria, and restraining the Commissioners constituting the State Liquor Authority from issuing a license authorizing such use of the premises.

The petitioner, a taxpayer, predicates his right to relief upon subdivision 2 of section 105 of the Alcoholic Beverage Control Law which provides: "No premises shall be licensed to sell liquors and/or wines at retail for off premises consumption, unless said premises shall be located in a store, the entrance to

which shall be from the street level and located *in a business center on a main thoroughfare* or on an arcade or sub-surface thoroughfare leading to a railroad terminal." (Italics by the court.) In Webster's New International Dictionary (2d ed.) " main " as an adjective has been defined as " 5. Principal; chief; first in size, rank, importance, etc.; as, the *main* line of a railroad; the *main* body of an army ". The respondents upon the oral argument did not and in their papers do not contend that the Legislature used the word differently.

Here, the exhibits submitted show clearly that 33d Street in Astoria is not a " main ", " principal " or " chief " thoroughfare. It is one of many secondary roads in that area, and with the exception of a few plots immediately adjacent to the intersecting avenues, it is zoned for residences. While it has not been urged on this application, it might be mentioned that there is no business center on this road, for surely one or two small stores on a street in the city of New York do not constitute a " business center ".

In opposition to this application, the respondents question only the power of the court to restrain the State Liquor Authority under sections 123 and 124 from issuing a license.

In *Matter of O'Brien* v. *Rozza* (247 App. Div. 747, affd. 271 N. Y. 545) the Appellate Division of this department, upon a similar application and involving a store a few hundred feet from the premises involved here, directed the cancelation of a license which had been issued contrary to section 105.

Here, the application for the license has been approved but the mere formality of issuing the license has not taken place. I do not believe it necessary for the petitioner to await that ministerial act before seeking the aid of the court. Accordingly the application is granted.

Settle order on notice.

(On reargument, January 22, 1946.)

The respondents have applied for permission to reargue a motion for an injunction under sections 123 and 124 of the Alcoholic Beverage Control Law. The court grants the permission requested.

Upon the argument of the original application the respondents did not discuss the merits of the petitioner's application but merely urged that the court was without power to restrain the State Liquor Authority from issuing a license. Now, they contend that the petition should have been dismissed on its merits.

The petitioner, a taxpayer, seeks to restrain the respondent, Daniel D. Flanagan, from operating a retail liquor store for the sale of liquor for consumption off the premises at No. 30–08 33d Street, Astoria, County of Queens, and to restrain the State Liquor Authority from issuing a license to Flanagan authorizing that use of the premises.

The basis of the controversy is subdivision 2 of section 105 of the Alcoholic Beverage Control Law which provides: " No premises shall be licensed to sell liquors and/or wines at retail for off premises consumption, unless said premises shall be located in a store, the entrance to which shall be from the street level and located *in a business center on a main thoroughfare or on an arcade or sub-surface thoroughfare leading to a rail-road terminal.*" (Italics by the court.)

In my original decision I agreed with the petitioner that the premises, 30–08 33d Street, were not in a *business center on a main thoroughfare,* and granted the injunction in the belief that the issuance of a license by the Liquor Authority would be contrary to law. The respondents contend now that the petitioner and the court are in error. The respondents did not, upon their first appearance before the court, nor do they now, contend that the Legislature used the word " main " in a special sense. In fact upon the present oral argument it was stated that the use of the word " main " by the Legislature was mere surplusage. In the papers submitted the respondents do not suggest what was intended by the Legislature. The Liquor Authority submits the affidavit of one Jack Reinstein, who states that the aforesaid section was enacted at the request of the Liquor Authority. He avers that " It has been the intent of the Liquor Authority, in submitting this provision for enactment into law and its practical construction thereof that the use of the word ' main ' as applied to describing ' thoroughfare ' was only for the purpose of distinguishing between a thoroughfare which was used by the public in general as compared to a thoroughfare which was either a private way, a private lane, a back alley, an arcade, sub-surface thoroughfare, or a cul de sac, right of way, or such similar passageway " and that " It was to distinguish between a passageway opening at both ends, which is used by the general public, and a passageway which was not open to the public or which was not used by the general public that the word ' main ' was inserted, and for no other purpose."

The Court of Appeals wrote in *Palmer* v. *Van Santvoord* (153 N. Y. 612, 616): " Words are not to be rejected as super-

fluous when it is practicable to give to each a distinct and consistent meaning. ' The good expositor,' says Lord COKE, ' makes every sentence have its operation to suppress all the mischief; he gives effect to every word of the statute; he does not construe it so that anything should be vain and superfluous, nor yet make exposition against express words, but so expounds it that one part may stand agreeable with the other and all may stand together.' (Coke's Rep. part VIII, p. 310) ", and stated in *People* v. *Dethloff* (283 N. Y. 309, 315) that in interpreting statutes we must proceed " upon the assumption that the Legislature did not deliberately place in the statute a phrase which was intended to serve no purpose ".

In *Matter of Hardecker* v. *Board of Education* (180 Misc. 1008, 1011, affd. 266 App. Div. 980, affd. 292 N. Y. 584) Justice KLEINFELD wrote: " The construction of a statute is a question of law for the court and the primary consideration is to ascertain and give effect to the intention of the Legislature. Such meaning is to be ascertained from the statute itself, and where the language is clear and unambiguous courts may not speculate as to possible meanings. They must take the act as they find it and construe it according to the plain meaning of the language used. Words of ordinary import should receive their understood meaning and the definitions of lexicographers are considered useful as guide posts in determining the sense in which the words were used. (McKinney's Cons. Laws of N. Y., Book 1, §§ 71, 92, 232, 234.) "

Construing subdivision 2 of section 105 in the light of these authorities, I believe we may not treat the word " main " as mere surplusage or give to it the meaning which the Liquor Authority has. The word " main " has been defined to mean " Principal; chief; first in size, rank, importance " and the word " thoroughfare " has been defined as " A passage through, as from one street or opening to another; an unobstructed way open to the public; a public road or street open at both ends; esp., a street or way through which there is much passing." (Webster's New International Dictionary [2d ed.].) In the absence of any showing that the Legislature intended to use the words in a special sense, I accept that lexicographer's definition. The Legislature used the indefinite article " a " rather than the definite article " the " before the word " main " and, therefore, I do not hold that the Liquor Authority must select one thoroughfare as the most important. For instance, in other localities it might be reasonable to hold that many or all of the intersecting streets were " main thoroughfares " — 34th Street and 5th Avenue in New York City intersect, yet

each is undoubtedly entitled to be included in that category.

Both respondents have defined the word "thoroughfare". While I do not question the statement that 33d Street is a "thoroughfare", it might be pointed out that the meaning that the Liquor Authority gives to the word, which it states that word has been given "from time immemorial", does not concur with the definitions quoted on page 5 of the individual respondent's brief from Bouvier's Law Dictionary, American and English Encyclopædia of Law and Black's Law Dictionary. These authorities hold a "thoroughfare" to be a street or highway, which is open at both ends, but the Liquor Authority states "a thoroughfare is any passageway opening at both ends * * *. A place may be a thoroughfare yet may not constitute a road, street, or highway."

As I stated in my original decision, the exhibits submitted show clearly that 33d Street is not a "main" "principal" or "chief" thoroughfare. Moreover, the zoning map submitted by the individual respondent shows that along 30th Avenue for several thousand feet in each direction from its intersection with 33d Street, the land bordering the avenue is zoned for business to a depth of 100 feet from the avenue, and that map shows no additional land on 33d Street zoned for business. Both sides of 33d Street, with the exception of the aforesaid 100 feet, are zoned and used for residential purposes. The stores and business establishments are concentrated on 30th Avenue. That avenue has a business center but 33d Street has not. Subdivision 2 of section 105 requires the premises to be "in a business center *on* a main thoroughfare". (Italics by the court.)

At present there is a liquor store on 30th Avenue in the building adjoining the building in which the proposed store would be situated. With respect to the issuance of licenses to other stores which are part of the "business center" on 30th Avenue, the 1,500-foot requirement should be complied with (Alcoholic Beverage Control Law, § 105, subd. 4).

The respondents urge also that the petition should be dismissed, for to grant it will result in an invalidation of many licenses heretofore issued. That point is unworthy of consideration, for if this court is correct in holding that the Liquor Authority has gone beyond its jurisdictional powers, it is no defense to show many prior errors, for error multiplied has never made right.

Accordingly, the court adheres to its original decision granting the application of the petitioner. No costs.

Settle order on notice.