Lawrence H. Cooke, J.
In this article 78 (Civ. Prac. Act) proceeding, petitioners, individually and as respective chairmen of the Ulster County Committees of the Republican and Democratic parties, seek an order: “ (1) directing respondent, Caroline k. simón, as Secretary of the State of New York, to make and transmit to the Board of Elections of Ulster County a certificate including the Judge of the Family Court of the County of Ulster as an officer to be voted for and elected by the voters of the County of Ulster at the general election to be held on November 6th, 1962 (2) directing the respondent, Caroline k. simón, as Secretary of the State of New York, upon the filing of a certificate of nomination for said office of Judge of the Family Court of the County of Ulster by the Republican Party and by the Democratic Party and by other political parties and independent bodies in said County to certify the names, residences and places of business, if any, to the Board of Elections of Ulster County; (3) or, in the alternative, in the event the Court determines that a Judge of the Family Court is not a state officer, directing the respondent, Lawrence D. Craft, as County Clerk of the County of Ulster, to make and transmit to the Board of Elections of Ulster County a certificate including the Judge of the Family Court of the County of Ulster as an officer to be voted for by the voters of the County of Ulster at the general election to be held on November 6th, 1962; (4) directing Joseph epstein and Seymour werbalowsky, constituting the Board of Elections of Ulster County, to place upon the ballot to be voted upon at the 1962 general election to be held November 6th, 1962, upon such certification, the names of the designees of the Republican and Democratic parties respectively, and of such other designees as may be lawfully nominated, for the position of Judge of the Family Court of the County of Ulster. ’ ’
The essential factual situation is not in dispute. It appears that on July 12,1962 the Board of Supervisors of Ulster County adopted a resolution, with the concurrent vote of the County Judge of that county, that a certificate be filed with the Secretary of State “on or before the First day of August of this year that a Judge of the Children’s Court who shall be the Family Court Judge should be elected within the County of Ulster at the next General Election.” Said certificate was filed with the Secretary of State on July 13, 1962 and on the same day said official sent a letter to the Ulster County Board of Supervisors *736 stating: “As we interpret Chapter 702, Laws of 1962, copy enclosed, no vacancy which will be required to be filled at the general election is created by the papers which you have submitted for filing.” A more lengthy communication from the Secretary of State to said board was sent on July 20, 1962 in which it was pointed out that the resolution in question and the accompanying certificates were sent subsequent to March 1,1962 and in which it was stated, among other things: “ The Secretary of State is not authorized by law to certify to County Boards of Elections vacancies in County Officers who lawfully may be voted for by the voters in the county. (Section 314 Sub. 3, Election Law) ”. A letter dated August 14, 1962 was sent to the County Clerk of Ulster County enclosing a certified copy of the said resolution of July 12,1962 and asking that said County Clerk certify to the Ulster County Board of Elections that “ a vacancy exists for the election of a Family Court Judge for Ulster County in the 1962 General Election.” The Clerk declined to 1 ‘ certify this request. ’ ’
The first and primary question to be determined herein is as to whether the filing of the resolution with the Secretary of State on July 13, 1962 created a vacancy in the office of Judge of the Family Court to be filled by the electorate of Ulster County at the general election to be held on November 6, 1962.
Section 131 of the Family Court Act, as added by chapter 687 of the Laws of 1962 and as amended by chapter 702 of said laws, both effective on September 1, 1962, said section being entitled “ Number of judges ”, provides in part:
“ The number of judges of the family court for each county outside the city of New York shall be as follows:
“ (a) in each county in which there was a separate office or offices of judge of the children’s court authorized by law on the thirty-first day of August nineteen hundred sixty-two, the number of judges of the family court for such county shall be equal to the number of offices so authorized except those authorised by certificate filed pursuant to subdivision two of section four of the children’s court act of the state of New York subsequent to March first, nineteen hundred and sixty-two; ” (emphasis supplied).
Subdivision 2 of section 4 of the Children’s Court Act provides, in part, as follows: “2. In any county where the county judge or special county judge is performing the duties of judge of the children’s court, the board of supervisors of the said county, with the concurrent vote of the county judge of the county, may on or before the first day of August in a given year file a certificate with the secretary of state to the effect that a *737 judge of the children’s court should be elected within the said county and the electors of said county shall at the next general election following the filing of said certificate choose a judge of the children’s court of said county”. Said Children’s Court Act was repealed by section 41 of chapter 689 of the Laws of 1962, effective September 1, 1962, the same date when the new Family Court Act (including art. 1, part 1, § 131 thereof) becomes effective.
While subdivision 2 of section 4 of the Children’s Court Act authorizes the Board of Supervisors of a county, with the concurrent vote of the County Judge of the county, to file a certificate with the Secretary of State on or before August 1 in any given year so as to create a separate office of Judge of the Children’s Court in said county, section 131 of the Family Court Act very definitely nullifies such filing insofar as creating a separate office of Judge of the Family Court, by the filing of a certificate for a separate Judge of the Children’s Court, except when a certificate was filed on or before March 1,1962. The last clause of subdivision (a) of section 131 absolutely excludes from the normal operation of the statute those instances where the certificate was filed subsequent to March 1,1962. Said last clause has no meaning and serves no purpose unless it be so interpreted.
The court must assume that said last clause was intended for some useful purpose (Matter of Hardecker v. Board of Educ. of City of N. Y., 180 Misc. 1008, 1011, affd. 266 App. Div. 980, affd. 292 N. Y. 584; People v. Dethloff, 283 N. Y. 309, 315; Matter of Evers v. Flanagan, 186 Misc. 101, 104-105). Petitioners contend in effect that they had until August 1, 1962 to file the certificate with the Secretary of State so as to create a vacancy in the office of Family Court Judge to be voted on at the next general election; but, if this were so, there would be no need for and no sense in the clause reading “ except those authorized by certificate filed pursuant to subdivision two of section four of the children’s court act of the state of New York subsequent to March first, nineteen hundred and sixty-two ”. Any argument that said quoted clause means in addition to those offices authorized by law on August 31,1962 is refuted by the thought that the said quoted clause would have been unnecessary in the event that it was so intended by the Legislature. In such event, the Legislature could have stopped at the words 1 ‘ so authorized ’ ’ and no additional words would have been necessary.
The Attorney-General on July 11, 1962 rendered an informal opinion in which, referring to subdivision (a) of section 131 of the Family Court Act, it was stated: 1‘ This section was intended to prevent the creation of new judgeships solely to meet the *738 terms of the new statute, leaving the situation in statu quo insofar as the number of judgeships is concerned. This was a result of the rapid increase in the number of new judgeships being created. In order to meet the problem of computing the necessary State aid appropriation, the Legislature saw fit to establish a cut-off date of March 1st, 1962 in the creation of new Children’s Court judgeships which would be carried over into the Family Court.” This legislative intent can be ascertained also from a reading of the Governor’s memorandum in approving the court reorganization bills and related legislation comprising chapters 684 to 705, inclusive, of the Laws of 1962. In reference to chapter 687, it was stated: 11 This bill amends the Family Court Act as a chapter of the Laws of 1962 by providing that the Family Court within the City of New York shall consist of twenty-three judges. Similarly, the number of judges in the Family Court in the other counties is fitted by law. This fitting of the number of judges establishes the basis for the new program of State-aid to local governments towards the payment of judicial salaries which is further implemented in the other bills.” (Emphasis supplied.) Said memorandum of the Chief Executive, concerning chapters 7v>l and 702, reads in part: <£ These bills, similar to the bill fixing the number of Family Court judges, fix the number of judges of the Surrogate’s and Family Courts in counties outside the City of New York, establishing the basis for the program of State-aid to local governments for payment of these salaries.” Thus, it can be seen that the legislative intent in enacting chapter 702 of the Laws of 1962, amending subdivision (a) of section 131 of the Family Court Act, was to set a ££ cut-off ” date of March 1,1962 in regard to the creation of new judgeships and thus £ £ fix the number of judges of * * # Family Courts in counties outside the City of New York, establishing the basis for the program of State-aid to local governments for payment of these salaries. ’ ’
Although the petition does not allege unconstitutionality, one of the attorneys appearing for petitioners on the argument advanced said contention. The memorandum submitted on behalf of petitioners also claims that subdivision (a) of section 131 of the Family Court Act is contrary to subdivision a of section 13 of article VI of the State Constitution. The attorneys appearing for respondents have consented that said claim be considered on this application, one with the understanding that he have until August 27,1962 in which to submit a brief on the subject.
The new article VI of the State Constitution was approved and ratified by the People on November 7, 1961, became a part *739 of the said Constitution on January 1, 1962 but its provisions shall not become operative until September 1, 1962, which last date shall be deemed the effective date thereof (N. Y. Const., art. VI, § 37). Subdivision (a) of section 13 thereof provides as follows: “ The family court of the state of New York is hereby established. It shall consist of at least one judge in each county outside the city of New York and such number of additional judges for such counties as may be provided by law. Within the city of New York it shall consist of such number of judges as may be provided by law. The judges of the family court within the city of New York shall be residents of such city and shall be appointed by the mayor of the city of New York for terms of ten years. The judges of the family court outside the city of New York, shall be chosen by the electors of the counties wherein they reside for terms of ten years.” The claim of unconstitutionality in regard to subdivision (a) of section 131 of the Family Court Act, in that it prevents the creation of a Family Court consisting of at least one Judge in each county outside the City of New York, is answered simply and clearly by section 14 of said article VI, Said section 14, entitled ‘6 Discharge of duties of more than one judicial office by same judicial officer ? reads as follows: ‘‘ The legislature may at any time provide that outside the city of New York the same person may act and discharge the duties of county judge and surrogate or of judge of the family court and surrogate, or of county judge and judge of the family court, or of all three positions in any county.” The Constitution does not require that there be a separate Family Court Judge in each county.
Considerable argument has been advanced as to the advisability of having a separate Family Court Judge in Ulster County but it should be kept in mind that, in considering the constitutionality of a statute, courts may not substitute their judgment for that of the Legislature as to the wisdom or expediency of the legislation for to do so would transcend the limits of the pertinent field of inquiry (Beauharnais v. Illinois, 343 U. S. 250, 262; Communications Assn. v. Douds, 339 U. S. 382, 400-401; National Psychological Assn. v. University of State of N. Y., 8 N Y 2d 197, 203; Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 415-416; Knapp v. Fasbender, 1 N Y 2d 212, 233; Thompson v. Wallin, 301 N. Y. 476, 488, affd. 342 U. S. 485, 801, 951). It should also be kept in mind that a legislative enactment carries with it a strong presumption of constitutionality, that while this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt, the party alleging unconstitutionality having a “ heavy ” burden, and that only as *740 a last resort will the courts strike down legislative enactments on the ground of unconstitutionality (Gitlow v. New York, 268 U. S. 652, 668; People v. Finkelstein, 9 N Y 2d 342, 344-345; Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293, 303; National Psychological Assn. v. University of State of N. Y., 8 N Y 2d 197, 202, supra; Wiggins v. Town of Somers, 4 N Y 2d 215, 218-219; Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 415, 418, supra; Easley v. New York State Thruway Auth., 1 N Y 2d 374, 379; Knapp v. Fasbender, 1 N Y 2d 212, 232-233, supra; Farrington v. Pinckney, 1 N Y 2d 74, 78; Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367).
Although the respondents have not objected to the presentation of the question of the constitutionality of the statute and have in fact consented to a consideration of it, it is well to point out the general rule regarding the subject of constitutionality in an article 78 (Civ. Prae. Act) proceeding as set forth in Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton (1 N Y 2d 508) wherein it was held (pp. 519-520): “ It is a general rule that a party cannot, in the same proceeding, rely upon a statute or retain benefits thereunder and attack its constitutionality (Fahey v. Mallonee, 332 U. S. 245; Buck v. Kuykendall, 267 U. S. 307; Shepherd v. Mount Vernon Trust Co., 269 N. Y. 234). The proper way to raise the constitutional question is by way of a separate action or proceeding (Baddour v. City of Long Beach, 279 N. Y. 167, motion for reargument denied 279 N. Y. 794, appeal dismissed 308 U. S. 503; Matter of Romig v. Weld, 276 App. Div. 514, 517), and we are advised that such an independent action is now pending.” However, an exception to the general rule was pointed out in People ex rel. Hotchkiss v. Smith (206 N. Y. 231) where petitioner sought a writ of mandamus directing defendants, composing the Board of Elections of Putnam County, to disregard as unconstitutional and void certain provisions of the Election Law in regard to independent nominations. The Court of Appeals pointed out at page 241 that the situation was exceptional and extraordinary and that the proceeding should be entertained. Here, too, the proceeding relates to the duties of public officers in a matter of a public nature and the facts and circumstances are equally exceptional and extraordinary. Petitions dismissed.