In the Matter of the Application of AUBREY J. DRUMMOND and Others, Copartners Doing Business under the Firm Name and Style of Drummond Bureau of Photography, Petitioners, for an Order against PAUL J. KERN, President, and Others, Commissioners, Constituting the Municipal Civil Service Commission of the City of New York, Defendants.

Supreme Court, Special Term, New York County, March 27, 1941.

*Leonard M. Wallstein, Jr.*, for the petitioners.

*William C. Chanler, Corporation Counsel* [*John D. J. Moore, Jr.*, of counsel], for William C. Chanler, Joseph D. McGoldrick and Almerindo Portfolio, Corporation Counsel, Comptroller and Treasurer, respectively, of the city of New York.

*Paul J. Kern* [*Arthur G. Silverman* of counsel], for the defendants.

SHIENTAG, J. This is a proceeding under article 78 of the Civil Practice Act to compel the defendants to do all things necessary to accomplish the payment by the city of New York of a certain bill rendered by the petitioners, a firm of legal photographers. The bill in question was incurred by the corporation counsel of the city of New York for photographs ordered by him from the petitioners for use as evidence in the trial of actions and proceedings to which the city was a party.

The facts are not in dispute. The corporation counsel for the fifty years during which he has used photographic exhibits as evidence in the trial of the city's litigation, has purchased such photographs from independent, responsible, commercial photographic companies which specialized in the field of legal or court photography, such as Underwood & Underwood, Fairchild Aerial Surveys, Harris & Ewing, News Syndicate Company, and the petitioner, Drummond Bureau of Photography, paying an agreed price for each photograph.

These photographs were taken by petitioners with the use of their own equipment and developed on their own premises, with their own materials and equipment, as part of their general business, and delivered to the law department as one of their customers for use in the preparation of defenses against accident claims and in litigated matters involving valuation, franchises and other subjects. The law department approved petitioners' bills for these photographs and took all steps necessary for their payment by the comptroller and the treasurer. Bills and vouchers in connection with the payment for such photographs ordered from different concerns have always been submitted to the comptroller, audited by him and paid.

This case arose out of the fact that during 1940 certain of the petitioners' bills were transmitted, through inadvertence, to the municipal civil service commission. The municipal civil service commission had previously given an examination for the civil service

position of photographer, there being a vacancy in that title in the department of hospitals at $1,200 per year. The civil service commission immediately communicated with the corporation counsel and advised him that it was " holding up the payroll " of the petitioners since there was a list in existence for the " position " of photographer. Insisting that the photographic companies from which the corporation counsel was purchasing his prints were " employees " of the city, the commission certified to the corporation counsel a list of persons, the certification stating that the tenure of office was " probably permanent " and the rate of compensation in the " position " was " 2.00 per negative." Meanwhile it retained in its possession an unpaid bill and voucher of petitioners and refused to transmit them to the comptroller for payment.

The law department, which had no position of photographer in its budget, no photographic laboratory, plant or equipment, and no appropriation therefor, and which in fact was paying petitioners one dollar and seventy-five cents for two prints of each negative, refused to " appoint " any of the persons " certified." The commission continued to stop the petitioners' " payroll " and petitioners commenced this proceeding.

The corporation counsel, despite the fact that it was within his power as provided by the Charter and declared by the courts to render a legal opinion to the comptroller that the relief sought by the petitioners would be granted by the courts, there being no defense, and that, therefore, an order should be consented to, authorized the municipal civil service commission to appear by other counsel. The president of the commission, a member of the bar, has appeared as attorney for his commission. The corporation counsel and the comptroller have submitted affidavits in support of the petition herein.

The civil service list to which reference has been made is entirely inappropriate in the situation here presented. That list is based upon full time employment at a fixed salary per annum. The specifications for that examination did not contemplate the use of materials and equipment nor payment at the rate of so much per photograph.

The inappropriateness of the present civil service list is not, however, determinative of the fundamental question here involved. That question is whether the practice followed by the corporation counsel for upwards of fifty years, without challenge, is in violation of the constitutional mandate that merit and fitness shall be the basis of the choice of public servants and that the test of such merit and fitness shall be competitive examinations where competitive examinations are practicable. (State Const. art. 5, § 6.) The courts have construed this requirement with extreme liberality,

and have frowned upon and condemned all practices, under whatever guise, that tended to impair the full effectiveness of this beneficent constitutional requirement.

The transactions involved in this proceeding do not constitute personal service within the meaning of the Civil Service Law. They are sales of merchandise. Therefore, the municipal civil service commission has no power to audit the petitioners' bills.

A proposal was made by the Drummond Bureau of Photography to provide photographs at one dollar and seventy-five cents per negative. When there was need for photographs, the corporation counsel communicated with the petitioners and ordered them. Then the petitioners would submit their bill for so many photographs " at one dollar and seventy-five cents apiece."

The relationship was at all times that of vendor and purchaser. There was no hiring, no appointment, no employment, no relation of master and servant between the law department and the Drummond Bureau of Photography or any of the other firms, corporations and individuals from whom it obtained photographs.

To be sure, some element of service exists in the transactions — the price of one dollar and seventy-five cents does not represent solely the intrinsic value of the photograph. This is, of course, true of all sales of merchandise for there is always present some element of human work. It is true of printed briefs and records which the law department purchases from printers without the assertion of jurisdiction by the civil service commission.

The courts have considered this precise question, and decided that the transaction was a sale and not a hiring of labor or a contract for the performance of services. In *People ex rel. Walker Engraving Corporation* v. *Graves* (243 App. Div. 652 [3d Dept. 1935]; affd., 268 N. Y. 648, 649) this question was squarely presented in a sales tax case. The intrinsic value of the finished photo-engraving represented only two per cent of the price. It was contended by relator that the transaction was a contract for the performance or rendition of services and not a sale of goods. The Appellate Division held that the transaction was a sale and the Court of Appeals unanimously affirmed. (See to like effect *People ex rel. Foremost Studio, Inc.,* v. *Graves,* 246 App. Div. 130 [3d Dept. 1936]; *Matter of United Artists Corp.* v. *Taylor,* 273 N. Y. 334 [1937].) Photographers are subject to the New York city retail sales tax, which is measured by and collected on the purchase price of each photograph. (Rules and Regulations of New York City Agencies, chap. 4, art. 53 [Comptroller's Sales Tax Regulations, art. 53].)

Photo-engravings, which are comparable to photographs in the sense that the intrinsic value of the finished product is slight in comparison with the price, have twice been held to be articles which are

bought and sold rather than with the result or product of services which are rendered. (*Photo-Engravers Board of Trade of New York, Inc.*, v. *Addison*, 145 Misc. 479 [App. Term, First Dept. 1932]; affd., 239 App. Div. 827 [1933]; *Standard Engraving Co., Inc.*, v. *Volz*, 200 id. 758 [1st Dept. 1922], distinguishing *People* v. *Epstean*, 102 Misc. 476 [1918].)

The contention of the civil service commission that the law department is in some way " employing " these firms and corporations is supported neither by the facts nor the law. These are business firms; they will and do sell photographs to anybody at an agreed price. They take the risk of profit and loss. They use their own equipment and automobiles. Their work requires continuous, independent, discretionary choice of method, over which the photographer has complete control.

This is not a case where a city agency seeks by the letting of contracts to evade the provisions of the Civil Service Law. There is no similarity between this case and *Palmer* v. *Board of Education* (276 N. Y. 222) where the contract requiring the steady performance of service in lieu of civil service appointment was held invalid.

Nor is this case like that of *Matter of Turel* v. *Delaney* (285 N. Y. 16). That was a true case of " appointments " and " positions " in the civil service. In that case the board of transportation of the city of New York retained a physician and surgeon, called a " contractor," to supply the medical and surgical care and treatment which the Workmen's Compensation Law required the board to provide for workmen employed by it in its operation of the city-owned rapid transit railroads. The contract provided that for the performance of such services the contractor was to be paid at the rate of $10,000 per year, and at the rate of $3,000 per year for each assistant surgeon regularly assigned to duty. Provision was made for the payment of graduate nurses at so much per week, and for a junior surgeon at so much per year. There were other provisions in the contract for payment to the contractor for the time for which any of the assistants may be engaged in giving testimony in workmen's compensation cases and for each home visit by an assistant doctor or surgeon, at the rate of three dollars for such visit.

The Court of Appeals held that the board of transportation did not have the power to enter into such a contract, since it was in violation of the civil service requirement of the State Constitution, and the positions were being filled without competitive examination. The physicians, who in essence brought nothing to their jobs but their skill and their willingness to work, were employed for regular periods, at regular salaries. Here, the petitioners are business men,

entrepreneurs, waiting for business to come to them, and sending in their bills for such business as they have received. They hold no jobs, receive no salaries, use their own plant and equipment, work for any one else they please, pay city sales taxes on what they sell to customers other than the city, and otherwise conduct a business.

The situation here is one that falls within the discretion of the appropriate city authorities. They may properly decide to continue the practice of having the corporation counsel, as the lawyer for the city and in charge of its litigation, employ outside business concerns, using their own employees, equipment and materials, to make the necessary photographs which the corporation counsel will purchase at so much per negative, or the city authorities may decide, in their discretion, to establish the position of photographer in the law department, on a full or a part time basis, or even to have a central photographic agency to which all city departments may resort. With the proper exercise of that discretion it is not the province of the courts to interfere, particularly where, as here, the practice has continued for almost fifty years without having its legality questioned in any way. (*Forbes* v. *Cohen*, 254 App. Div. 548; *Matter of Smith*, 279 N. Y. 479; *City of New York* v. *New York City R. Co.*, 193 id. 543; *City of New York* v. *Buckley*, 260 App. Div. 19.)

The position of photographer exists, as it undoubtedly should exist, in other departments, bureaus and agencies of the city of New York. That is a matter of administrative discretion which the heads of those departments, working in conjunction with the board of estimate and the director of the budget, have resolved in favor of the creation of the position and the granting of appropriations therefor, together with appropriations for the maintenance of a photographic plant for the use of the employee who fills the position of photographer.

So, it may be that in their administrative discretion the law department, the board of estimate and the director of the budget may decide that the corporation counsel should have a photographer as a member of his staff, and in that event they will of course be required to create the position, provide the facilities and equipment and the appropriations therefor. When that is done, the position will come under the civil service, and it will be the duty and within the power of the civil service commission to classify the new position.

Under the conditions now prevailing, however, the practice of the corporation counsel is not in violation of the civil service mandate of the Constitution or of any provisions of the Civil Service Law.

The application is accordingly granted. Settle order.