In the Matter of FRANK J. HARDECKER et al., Petitioners, *v.* BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, Kings County, April 28, 1943.

*De Graff & Foy* for petitioners.

*Thomas D. Thacher, Corporation Counsel,* for respondent.

KLEINFELD, J. Motion for reargument granted. Upon the original motion, the papers submitted presented questions of fact and therefore a trial of the issues was ordered.

Upon this application, the parties have entered into a stipulation pertaining to the factual matters and request a final disposition of the controversy as a matter of law.

Petitioners seek to compel the Board of Education to utilize the services of the employees of the Bureau of Construction in the preparation of plans for projects constituting a portion of the " Post-War Works Program." The facts as they appear relevant are as follows: On July 9, 1941, the

Board of Education, in accordance with law, prepared and adopted a departmental estimate for capital projects for the six-year period 1942–1947, both inclusive, providing for 225 projects separately stated for each of said years. All of the funds for the preparation of plans and specifications and the completion of said projects were expected to be derived from the usual resources of the City of New York. Five months later, however, war broke out with its concomitant problems and exigencies which had been entirely unforeseen in July of 1941. Materials were subjected to priorities; governmental regulations severely restricted almost all phases of industrial activities; and one of the direct results was that the construction of new school buildings was completely stopped. Respondent alleges that without this program, the number of the employees of the Bureau of Construction of the Board of Education as well as other similar bureaus in other departments and agencies of the City would have had to be greatly reduced. In order to meet these problems adequately and provide for the emergencies created by them, the Mayor of the City of New York proposed a special city program and on April 24, 1942, sent a message to the City Planning Commission directing the preparation of a " revised program " in the light of existing conditions and future exigencies. The City Planning Commission considered the recommendation and prepared a comprehensive plan known as the " Proposed Post-war Works Program." The program itself envisaged a number of projects in 25 separate departments and agencies of the City of New York, including the Board of Education, at a total cost of over $700,000,000, for which over $25,000,000 will be required for complete plans and specifications. Included in the special city-wide program are many new projects and some that had been included in previous capital budgets. Respondent also alleges that the City cannot and will not undertake this vast special program relying solely on its own resources; that federal assistance is expected and necessary; that the form and extent of such assistance is an unknown factor; that much of the work included in the Post-War Works Program will depend upon this factor, and that the city's plans, therefore, are conditional and contingent upon forces and elements outside its own control. In a subsequent message and on September 15, 1942, the Mayor of the City of New York outlined in greater detail some of the basic considerations with reference to the plan of the Post-War Works Program. The Mayor stated: " The Board of Estimate and the City Council have already author-

ized an amount of $22,000,000 for necessary construction plans. Let me make clear here, for the benefit of the amateur planners, that these plans are not just surveys, pictures or renderings. Plans mentioned in connection with the present city program, unless designated as studies or preliminary plans, mean actual working drawings and specifications. Of this amount, the Board of Estimate has appropriated $10,500,000 to be expended currently for the preparation of the working plans and specifications. The method employed is to keep existing engineering and architectural staffs in the departments of government employed to their full capacity and preserving for our city and country private engineering and architectural organizations that otherwise might be dispersed and lost. This would be an irreparable loss not only to our city, but to our country. I only wish we could do more.''

Respondent asserts further that it is evident that the unequivocal intention of the city administration and that of the Board of Education is to '' keep existing engineering and architectural staffs in the departments of government employed to their full capacity * * * .'' Further, that the City Planning Commission, the Board of Estimate and the City Council, in approving a post-war works program in compliance with the Mayor's message, have ratified and confirmed the plan and the policies governing the conditions attendant on the program. In further support of the respondent's contentions there has been submitted the affidavit of Robert Moses, a member of the City Planning Commission, City Park Commissioner and member of the State commission for postwar public works planning, which states in part: '' * * * The reason why it is a special case is because of the paramount necessity of completing the design program, to be ready by the end of the war. By this method the regular permanent civil service staffs are fully employed and the services of the very best architects and other technicians in private practice are secured. Only by this method can the completion of this emergency design program be assured.''

In connection with the postwar construction program and on October 28, 1942, the Board of Education of the City of New York adopted a resolution to award to private architects, contracts for the preparation of plans and specifications for 8 proposed school buildings selected from among the projects in the capital program of the Board of Education. In challenging the legality of the foregoing resolution, petitioners rely on subdivision 4 of section 451 of the Education Law, which reads

as follows: " In a city having a population of one million or more, all designing, draughting and inspecting necessary in connection with the construction, additions to, alterations and maintenance of school houses shall be performed by a bureau established and maintained for this purpose under the board of education. The work of this bureau shall be performed by civil service employees in the classified civil service under the direction of the superintendent of school buildings, except that repairs, betterment and maintenance of heating and ventilating plants and equipment, elevators and mechanical equipment shall remain under the direction of the superintendent of plant operation. In a special case upon approval of the board of estimate and apportionment, such designing, draughting or inspecting may be otherwise performed."

This proceeding presents for determination, therefore, the question whether such contracts constitute a " special case " within the meaning of the above-quoted section of the Education Law. My attention has not been called to any decision bearing directly upon the problem presented, and research has failed to discover such a precedent. The construction of a statute is a question of law for the court and the primary consideration is to ascertain and give effect to the intention of the Legislature. Such meaning is to be ascertained from the statute itself, and where the language is clear and unambiguous courts may not speculate as to possible meanings. They must take the act as they find it and construe it according to the plain meaning of the language used. Words of ordinary import should receive their understood meaning and the definitions of lexicographers are considered useful as guide posts in determining the sense in which the words were used. (McKinney's Cons. Laws of N. Y., Book 1, §§ 71, 92, 232, 234.)

The court must assume that the last sentence of the above statute was intended for some useful purpose. The plainly expressed intention is that in a " special case " the Board of Education, with the approval of the Board of Estimate, may authorize the employment of private architects. Just what is a " special case " is not defined. These words, however, convey the idea that it is something which is out of the ordinary. Webster defines " special " as " 1. distinguished by some unusual quality; uncommon; noteworthy; extraordinary; * * * . 6. additional to the regular, extra; utilized or employed for a certain purpose in addition to the ordinary. 7. confined to a definite field of action; designed or selected for a particular purpose, occasion or the like ".

It would seem that a " Post-War Works Program " is a special case in that it is something out of the ordinary, uncommon and extraordinary. It has for its aim an easy transition from a war to a peace economy immediately following the cessation of hostilities, and particularly the prompt employment of soldiers as they return from the far-flung and widespread battlefronts. ' Under such circumstances, the court may not give to the words " special case " a narrow construction which, in effect, might tend to defeat such laudable purposes.

Moreover, the court is also of the view that a departure should not be lightly made from the practical construction placed upon the statute by the officers whose duty it is to operate thereunder and to enforce it. In fact, much weight should be given to their interpretation and where, as here, the Board of Education and the Board of Estimate have determined that the situation is one which presents a " special case ", the court is constrained to concur with that conclusion.

Petitioners' contention that the designed program is detrimental to the merit system is not substantiated by the facts. Parenthetically it may be stated that this court has always been most zealous in its efforts to uphold and protect the merit system in the civil service of the State. In the present case, however, it clearly appears that the Post-War Works Program will have no such harmful effect inasmuch as one of its primary purposes is to provide work for such employees for the duration, for otherwise priority restrictions and governmental regulations might well necessitate a drastic reduction in the staff of the Bureau of Construction. In the circumstances, the Post-War Works Program thus redounds to the benefit of such civil service employees in that it seeks to maintain their continued employment.

Petitioners' application for final order is, therefore, denied and the petition is dismissed.

Settle order on notice.