In the Matter of CIVIL SERVICE TECHNICAL GUILD et al., Petitioners, against FIORELLO H. LAGUARDIA et al., Constituting the Board of Estimate of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, October 11, 1943.

*Albert B. Breslow* for petitioners.

*Ignatius M. Wilkinson, Corporation Counsel (William S. Lebwohl* of counsel), for respondents.

*Jeremiah M. Evarts* for Triborough Bridge Authority, *amicus curiæ.*

*Harry N. French, J. G. Fink* and *Bryan Brady* for New York Chapter of American Institute of Architects, and others, *amici curiæ.*

*Raymond P. McNulty* and *Ruth I. Wilson* for American Institute of Consulting Engineers, *amicus curiæ.*

PECORA, J. In preparation for a readjustment from a wartime to a peacetime economy, the City of New York, like the Federal and State governments, in June, 1942, adopted a Post-War Planning Program which contemplates public improvements costing some $700,000,000. This emergency program calls for current expenditures of $25,000,000 for the preparation of plans and specifications for such projects, which plans, it is hoped, will be completed by June, 1944. In carrying forward this program, the Board of Estimate has allocated about $5,000,000 for the award of contracts to private engineering and architectural firms in the city of New York. At the time of the institution of the within proceeding approximately ninety such contracts had been awarded, totalling about $2,600,000. The petitioners herein include a person who is an engineer on a preferred list, and an association of competitive civil service employees in the architectural and engineering service of the City of New York and its agencies. They bring this proceeding under article 78 of the Civil Practice Act to compel a discontinuance of the engagement of the private engineering and architectural firms and their staffs upon a contract basis and to require the appointment of engineering and architectural employees from civil service eligible lists, or according to civil service rules, to perform said work. Although voluminous affidavits and exhibits have been filed upon this application, it appears that the only question to be determined is one of law, viz., whether there has been a violation of the provisions of section 6 of article V of the State Constitution. It is there provided: " Appointments * * * in the civil service of the state, and * * * cities * * * shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive *, * * ".

The reasons for the action taken by the Board of Estimate, advanced in the answering affidavits, are pertinent only to the question of whether there has been any arbitrary or capricious exercise of a power. The contracts attacked were evidently entered into to meet technical problems which private firms were especially equipped to master, to accelerate the

completion of plans, and to assist in preserving intact many private engineering and architectural organizations that would otherwise be dispersed to the great detriment of the City. It is clear from the undisputed facts that the power of the Board of Estimate was wisely exercised, and were this court permitted to review such discretion it would confirm the action taken. There is presented, however, the legal issue of constitutional infraction.

In approaching the problem certain unmistakable signs along the road point to the correct solution. Since the organization of the City of New York in 1897, it has been a practice, when deemed advisable, to award contracts for private architectural and engineering services. The difficult architectural and engineering problems involved in the construction of public improvements demand the highest degree of specialized professional skill for their solution. The City for years has searched among those with experience and talent to meet the requirements of design and construction called for by the nature of the particular improvements under consideration. This long-standing practice constitutes a practical construction of the Constitutional provision dealing with civil service. Whenever the power to award such contracts has been challenged, courts have approved the practice. (See *Matter of Curran* v. *Board of Estimate of City of New York*, 173 Misc. 1022, affd. 259 App. Div. 712, leave to appeal denied 283 N. Y. 778; *Horgan & Slattery* v. *City of New York*, 114 App. Div. 555; *Buck* v. *City of New York*, 127 Misc. 354; *Matter of Meadows* v. *Triborough Bridge Authority*, N. Y. L. J. Feb. 8, 1938, p. 659, col. 2; *Matter of Hardecker* v. *Board of Education of the City of New York*, 180 Misc. 1008.)

Moreover, the award of contracts for architectural and engineering work does not constitute a method for making " appointments " in the " civil service " of the City. The provisions of the contracts awarded do not create any employer-employee relationship but a contractual one between an independent contractor and the City. The contracts call for specific studies, plans and specifications. The City does not control the office organizations of such firms, has nothing to do with the persons they employ, does not prescribe hours of employment, and is not their sole client.

The distinction between *bona fide* contracts with independent contractors and appointments to positions in the civil service is

clearly pointed out in *Matter of Meadows* v. *Triborough Bridge Authority* (*supra*). In that case there was a challenge to the power of the Triborough Bridge Authority to award contracts for architectural and engineering services. As here, the constitutional provision was advanced as an impediment to such power. The court there pointed out that the services of architects and engineers in drawing up plans were of a temporary and transient nature, while, as stated in *Matter of Social Investigator Eligibles Assn.* v. *Taylor* (268 N. Y. 233, 237), "The command of that section [N. Y. Const. art. V, § 6] is addressed to conventional and stable duties of the functionaries of civil government."

So, too, in *Matter of Drummond* v. *Kern* (176 Misc. 669) the court upheld the validity of a contract between the corporation counsel and a photographic firm for the furnishing of photographs whenever required. The furnishing of plans and specifications are in some respects similar to the making of photographs.

*Matter of Curran* v. *Board of Estimate* (*supra*) involved the construction of subdivision 4 of section 683 of the New York City Charter as amended by chapter 922 of the Laws of 1937, which permitted the employment by the Department of Public Works of private architects in a consulting or advisory capacity where the cost of the building was to exceed $100,000. While it is true that the court, in upholding the right of the Department to engage architects in private practice for architectural services beyond mere advice, was construing a special statute, it must be obvious that if the practice violated the constitutional provision the statute would be subject to the same infirmity.

*Matter of Hardecker* v. *Board of Education* (*supra*) presents a case dealing with contracts which are part of the Post-War Works Program. Subdivision 4 of section 451 of the Education Law permits the Board of Education to employ architects in private practice. The court upheld the Board of Estimate in its determination that the design and construction of certain Board of Education projects in the Post-War Program should be let to architects and engineers engaged in private practice. Here, too, it is no answer that a special statute was under consideration. The constitutionality of the procedure must have been approved or else the statute would have been declared invalid.

The case of *Turel* v. *Delaney* (287 N. Y. 15) is clearly distinguishable. There the contract in effect provided for regular-salaried, full-time employment of physicians and nurses to

carry on the day-by-day treatment of injured employees of the Board of Transportation. Such treatment was required by law, and was in every sense part of the " conventional and stable " duties of the department to which " the command " of section 6 of article V of the State Constitution is addressed. Furthermore in that case it was conceded that the Board of Transportation could " have enlisted a capable medical and surgical organization by means of competitive examinations." (*Matter of Turel* v. *Delaney*, 285 N. Y. 16.) In the instant proceeding the work involved is highly specialized temporary work.

Finally, the public policy of the State as expressed in subdivision 4 of section 451 of the Education Law, and in subdivision 4 of section 683 of the New York City Charter (1938), heretofore mentioned, gives tacit approval to the practice of using private architectural and engineering firms. A further expression of such policy appears in chapter 660 of the Laws of 1943, where the Legislature gives power to the State Superintendent of Public Works to employ private engineers and architects in connection with State projects ordered by the State Post-War Public Works Planning Commission. In 1937, the Legislature passed a bill aimed at the identical purpose of the instant proceeding. (S. Int. 2021, Pr. 2473.) The bill provided that services of private architects or engineers could be used only in an advisory or consultant capacity. Governor Lehman vetoed the bill, and in the memorandum accompanying the veto the Governor said, in part: " In effect, if approved, this bill would unduly hamper administrative officials of the State and local units of government from exercising judgment as to the use of private architects or engineers. In my opinion it is important to keep the door open so that if a unit of government desires to use private architects or engineers to do an entire job in special cases, government may do so. It is important that the State of New York and its municipalities maintain the highest standards of architectural and engineering achievement." (Public Papers of Gov. Lehman, 1937.)

Similar bills have been introduced every year since 1937, but none has passed the Legislature.

I therefore conclude that nothing contained in the Constitution of the State of New York or in the provisions of the Civil Service Law prohibits the City of New York from awarding contracts for architectural and engineering services to private concerns in connection with the Post-War Planning Program. This court further holds that the action of the City attacked

herein is in line with sound public policy and represents a wise exercise of discretion. The application, therefore, is in all respects denied, and the petition dismissed. Settle order accordingly.