Dominic S. Rinaldi, J.
Petitioners in this article 78 proceeding are employees of the New York City Transit Authority (hereinafter called ta) and are presently on a promotion list for the position of Surface Line Dispatcher promulgated by the New York City Department of Personnel in 1963. They seek an order which would compel respondent, Manhattan and Bronx Surface Transit Operating Authority (hereinafter called mabstoa) to make appointments for such position from this list; to rescind prior appointments made by respondent for this position; to fill such vacancies so created by appointments from this ta list, and to enjoin respondent from making future such appointments otherwise than from this or other civil service *945 lists. Local 100 of the Transit Workers Union by their president, Daniel Gilmartin, the bargaining agent for both ta and mabstoa, was given leave to intervene here, has interposed an answer and joins respondent in opposing the application.
The facts do not appear to be in dispute, mabstoa was created by special action of the New York State Legislature as a “ public benefit corporation ” pursuant to section 1203-a of the Public Authorities Law to operate certain surface bus lines taken over by New York 'City by condemnation as authorized by section 20-d of the General City Law (L. 1962, ch. 262). By resolution in March, 1962, the New York City Board of Estimate found that an emergency situation existed necessitating the acquisition by the city of certain bus lines theretofore operated in The Bronx and Manhattan by Fifth Avenue Coach Lines, Inc. and Surface Transit, Inc. By lease dated March 20, 1962, the city turned these lines over to mabstoa for operation.
Section 1203-a of Public Authorities Law, describes mabstoa as a “ subsidiary of the transit authority ’ ’ and provides in subdivision 2 that “ The purpose of said subsidiary corporation shall be to operate, pursuant to the powers conferred hereunder and for a temporary period, the omnibus lines hereafter acquired by the city, until the said omnibus lines shall be sold or otherwise disposed of to public or private operation. The directors of such subsidiary corporation shall be the persons holding the offices of chairman and members of the transit authority or their successors.” By paragraph (b) of subdivision 3, mabstoa is authorized “ to appoint officers and employees, assign powers and duties to them and fix their compensation.” This subdivision expressly provides that “ Said officers and employees shall not become, for any purpose, employees of the city or of the transit authority and shall not acquire civil service status or become members of the New York city employees’ retirement system ”.
The lease between the city and mabstoa implementing this enabling legislation also recites that the operation is “ for a temporary period until such omnibus facilities are sold or otherwise disposed of to private or public operation” and repeats in section 2.1 of article II that the lease is for a “ temporary period ” to terminate on December 31, 1963 “ or on such earlier date on which the City shall sell or otherwise dispose of the omnibus lines to private or public operation.” Again by section 2.4 it is declared that the intent and policy of the parties is “ to evaluate and determine as soon as practicable whether the best interests of the City and the traveling public will be served by public or private operation.” This lease was extended by *946 amendment dated December 26, 1963 for the further term to expire December 31, 1965 “ or on such earlier date on which the City shall sell or otherwise dispose of the omnibus lines to private or public operation. ’ ’
The authority of the city to condemn these lines was recognized in Fifth Ave. Coach Lines v. City of New York (11 N Y 2d 342). However, a review of a condemnation award made by Mr. Justice Hecht is still pending and as yet undetermined in the Court of Appeals (Matter of City of New York [5th Ave. Coach Lines], 46 Misc 2d 14, affd. 23 A D 2d 463).
The main thrust of petitioners’ application is directed at section 1203-a of the Public Authorities Law insofar as this section dictates that employees of mabstoa “ shall not become * # * employees of the city or of the transit authority and shall not acquire civil service status ”. It is their claim that the Legislature exceeded its powers in this regard and this provision is violative of section 6 of article Y of the New York State Constitution which reads: ‘ ‘ Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ”.
These petitioners who are Surface Line Operators in ta, in April, 1963, were placed on a list of eligible candidates for promotion to Surface Line Dispatcher following an examination held in 1962. The notice of examination issued by the New York City Department of Personnel, City Civil Service Commission, provided that “ it was open only to employees of the New York City Transit Authority ” and that the list to be established “ will be used to fill vacancies throughout the transit authority.” It is their contention that the description of mabstoa as a “ subsidiary ’ ’ in section 1203-a in effect constitutes a subservient branch of ta and that this notice of examination was intended to include appointments to mabstoa. I cannot agree with this view. The fact that mabstoa and ta have the same directors or officers or that they are both accorded similar powers, responsibilities and duties by law does not of itself effect a merger of identity (11 N. Y. Jur., Corporations, § 15, p. 123; Connecticut Gen. Life Ins. Co. v. Superintendent of Ins., 10 N Y 2d 42). I believe that the intention here was to create an independent entity with separate viability and powers delegated by law. The association with ta was clearly mandated for convenience in an emergency situation following the take-over of these facilities. Further, there is no convincing proof that the Civil Service Commission intended that the list to be promulgated was to be *947 used to fill vacancies in mabstoa. The notice of examination provided that it was open only to “ employees of the New York City Transit Authority” and that the resulting list would be used to fill vacancies throughout the “ transit authority.” It effectively excluded mabstoa employees from this promotional opportunity. Petitioners’ argument leads to an inequitable and distasteful conclusion — that for the benefit of these petitioners, employees of mabstoa were to be denied advancement in their own organization. Such a determination would be palpably unfair and discriminatory. If there is any merit in petitioners ’ application, it does not lie in this branch. Inequity is not cured by inequity.
Militating also against petitioners’ position is the oft-stated rule that the Civil Service Commission has the right and in appropriate circumstances the obligation to limit promotional opportunities to particular departments and units (Civil Service Law, § 52, subds. 1, 4; Matter of Wirzberger v. Watson, 305 N. Y. 507, 513; Matter of Cornehl v. Kern, 260 App. Div. 35, 38, affd. 285 N. Y. 777). Granting arguendo the need for civil service intervention and examination here, there is every likelihood that it would and could have been restricted to the employees of mabstoa alone.
Although counsel for all the parties have done a notable job in researching and arguing the issues here presented, they have produced no judicial determination directly in point and my investigation has failed to discover any. The main issue is the validity of the disputed provision of section 1203-a of the Public Authorities Law. In a case originating in this court which also involved interpretation of a similar statute in the light of section 6 of article V of the Constitution (Matter of Hardecker v. Board of Educ. of City of N. Y., 180 Misc. 1008, affd. 266 App. Div. 980, affd. 292 N. Y. 584), Mr. Justice Kleinfeld stated (p. 1011): “ The construction of a statute is a question of law for the court and the primary consideration is to ascertain and give effect to the intention of the Legislature.” Paralleling the issue in this matter also, this same case states further (p. 1011): ‘ ‘ The court must assume that the last sentence of the above statute was intended for some useful purpose.” Beyond doubt the express exclusion of mabstoa employees from city employment and civil service status was designed to accomplish a purpose. The question here to be resolved is whether it is a valid purpose vis-a-vis section 6 of article Y of the Constitution. If possible the determination should be made without recourse to constitutionality. “It is well settled that issues of constitutionality should not be decided before they need be.” (Matter *948 of Peters v. New York City Housing Auth., 307 N. Y. 519, 527; see, also, Rescue Army v. Municipal Ct., 331 U. S. 549, 569.)
Proceeding then to the crux of this argument, i.e., whether this legislative enactment infringes on the constitutional caveat with respect to civil service coverage, the purpose and intent of this section become important. “ Temporary ” operation is referred to again and again in the law and in the leasing agreements between the city and mabstoa. There is an unmistakable intent to make this only an interim operation pending determination as to “ whether the best interests of the city and traveling public will be served by public or private operation. ’ ’ Although, as I have noted above, there is no judicial precedent squarely in point, possibly the most, significant pronouncement can be found in Matter of Social Investigator Eligibles Assn. v. Taylor (268 N. Y. 233, 237) where the court stated: “ The command of that section [N. Y. Const., art. V, § 6] is addressed to conventional and stable duties of the functionaries of civil government.” (Emphasis supplied.) The foreg’oing case is cited with approval in Matter of Civil Serv. Technical Guild v. La Guardia (181 Misc. 492, affd. 267 App. Div. 860, affd. 292 N. Y. 586).
The emergency confronting the city which led to the condemnation of these surface lines required an immediate and urgent arrangement for their operation, however temporary, which was far from “ conventional.” The petitioners themselves impliedly attest to the fact that no “ stable ” arrangement or organization has been achieved by their argument that concession to their demands would not impede or prejudice any plan of the city for possible future private ownership and operation. Respondent Authority properly points out in this respect that the matter is presently before the Court of Appeals and that there has been no final determination yet as to the cost of acquisition by the city. Accordingly, any proposal to transfer any or all of these lines to private ownership would be without benefit of a known cost basis to the city and would be subject to justified criticism.
We must concede that the city to this date has made no plans as yet toward any but stop-gap interim operation pending final determination as to disposition of these facilities. Viewed in that light, the proposals of these petitioners would wreak havoc in the administration of mabstoa. Intervenor union which represents both ta and mabstoa points out that they have separate and distinct bargaining agreements, substantial variations in their systems of pensions, wages, disciplinary proceedings, promotional procedures, vacations, sick leave, etc. The union vehemently opposes this application as shortsighted. I am constrained to agree.
*949 Matter of Meadows v. Moses (44 N. Y. S. 2d 697, 698-699) involved an application by Engineer Inspectors on a New York City Civil Service list to compel the respondent Authority to hire them and to dispense with similar inspectors employed for the purpose by a private contractor engaged in construction of the Bronx-Whitestone Bridge. The court there, following the precedent and reasoning of Matter of Social Investigator Eligibles Assn. v. Taylor (supra) held that the enabling legislation and the action of the Authority were not within the purview of section 6 of article V of the New York State Constitution and said in language which is applicable to this matter: " The Authority in proceeding as it has is merely carrying out the mandate of the Act by which it was created. The granting of petitioners’ application would be an interference with the function and purpose of the Authority and would hamper and impede it in the successful prosecution of its duties.”
I seriously doubt petitioners ’ right to initiate this proceeding. Matter of Andresen v. Rice (277 N. Y. 271) despite their counsel’s argument on that score, does not seem to be helpful. In that case it was held by the Court of Appeals that petitioner who was eligible to compete for the position of State Patrolman and was a citizen and resident of New York State had an interest in the determination that the posts were subject to civil service laws and competitive examinations. In the instant case, as stated above, it is my view that petitioners have no right to compete for promotional jobs in mabstoa. However, the issue becomes academic in the light of the final determination here that the controversial provision of section 1203-a of the Public Authorities Law is valid and should be sustained.
I have expressly made no determination as to the status of mabstoa as a “ civil division ” as contemplated by section 6 of article V and prefer to leave this issue, if there be any, to future determination if and when the ‘1 temporary ’ ’ status of mabstoa comes to an end. The application is denied and the petition dismissed, without costs.