*365 OPINION OF THE COURT
Meyer, J.
Appointments and promotions by a public authority are not appointments and promotions in the civil service of the State or a civil division thereof within the meaning of section 6 of article V of the State Constitution. Such appointments and promotions are not governed by the Civil Service Law, therefore, unless the Legislature in establishing the particular authority so provides, or unless the only purpose of entrusting the function to be performed to an authority is evasion of the constitutional requirement applicable to the State and its civil divisions. Nor does the fact that an authority exempted from civil service requirements by the Legislature has promoted on the basis of competitive examination estop it from abandoning that practice. The order of the Appellate Division insofar as appealed from should, therefore, be reversed, with costs, the first and third causes of action of the complaint dismissed, and the certified question answered in the negative.
I
The Manhattan and Bronx Surface Transit Operating Authority (hereafter MABSTOA or the Authority) was created by the Legislature in 1962, as a subsidiary of the New York City Transit Authority, to operate bus lines, formerly privately owned and operated, which had been acquired by the City of New York through condemnation proceedings (Public Authorities Law, § 1203-a). The statute creating MABSTOA specifically provides that its officers and employees “shall not become, for any purpose, employees of the city or of the transit authority and shall not acquire civil service status” (Public Authorities Law, § 1203-a, subd 3, par [b]).
Notwithstanding that provision, the present action seeks to enjoin the Authority from making appointments and promotions except from eligible lists promulgated on the basis of competitive examinations and to require that it comply with section 6 of article V of the State Constitution and specified sections of the Civil Service Law. Plaintiffs are the collective bargaining representatives of employees *366 in certain supervisory and white-collar positions and the presidents of those organizations. The Authority and its officers are defendants.
The complaint sets forth four causes of action; the first alleging violation of the Constitution and the Civil Service Law; the second, violation of sections 45, 75 and 80 of the Civil Service Law; the third predicated upon estoppel based upon the Authority’s practice, discontinued in June, 1980, of making appointments and promotions from eligibility lists based upon competitive examinations, upon which, it is alleged, the employees have relied as “one of the terms and conditions of their employment”; and the fourth based upon section 1983 of title 42 of the United States Code and claimed violations of due process and equal protection. On defendant’s motion to dismiss, Special Term dismissed the second and fourth causes of action but otherwise denied the motion, holding as to the first cause of action that the Authority is a civil division of the State and thus within the constitutional mandate, and as to the third, that there was jurisdiction to resolve the estoppel claim in light of the public policy involved. On appeal by both sides to the Appellate Division, that court affirmed on the opinion of Special Term but granted the Authority leave to appeal and certified to us the question whether so much of its order as denied the motion to dismiss the first and third causes of action was proper.
II
Section 6 of article V of the State Constitution mandates that and promotions in the civil service of the State and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive”. Based upon review of the constitutional history of the provision and its construction by the courts, we conclude that a public authority is not a “civil division” of the State within its meaning.
A
The provision was first adopted as part of the Constitution of 1894. As originally proposed it would have covered *367 only the State and cities. The words “all of the civil divisions thereof, including cities and villages” were added, as the Convention debates establish, to expand the reach of the provision beyond urban regions to the “country districts,” including rural counties, towns and villages, as well (4 Revised Record of Constitutional Convention of State of New York, 1894 [1900 Steele rev], pp 1021-1024, 1034 [hereafter Constitutional Convention]; see Chittenden v Wurster, 152 NY 345, 354). Clear from the debates is the fact that “civil divisions” also included all “departments” and “offices” of the State, wherever located, without regard to their particular nature or size (Constitutional Convention, at pp 1030-1034, 1039-1046).
The phrase comprehended, additionally, districts established to perform a particular governmental function in a given territory. At the time the 1894 Constitution was adopted these included police districts (see, e.g., People ex rel. McCune v Board of Police, 19 NY 188), sanitary districts (Metropolitan Bd. of Health v Heister, 37 NY 661) and fire districts (People v Pinckney, 32 NY 377), and after its adoption, school districts (Palmer v Board of Educ., 276 NY 222, 228; Herman v Board of Educ., 234 NY 196) and public welfare districts (Matter of Kraus v Singstad, 275 NY 302) were also held to be civil divisions within the provision. Each, however, as had the earlier counterparts, exercised a particular governmental function — education, energy, welfare — within a limited and defined territory.
B
There were no public authorities in existence when the 1894 Constitution was adopted, the first in New York apparently being the 1921 creation of the Port of New York Authority (see Gaynor v Marohn, 268 NY 417, 424, n). The question whether such an authority was covered by section 6 of article V appears not to have been raised prior to 1929, when the Attorney-General was asked whether employees of the Niagara Frontier Bridge Commission were in “the civil service of the state.” Noting that the Commission “represented] a peculiar legislative development of recent years, a corporation having some of the characteristics of a private corporation and some of a state instrumentality”, the Attorney-General reasoned that a prime purpose for *368 creating such corporations was to separate their administrative and fiscal functions from the State and its subdivisions and concluded that “this separation of function takes the commission and its employees beyond the present scope of the civil service” (1929 Opns Gen 223, 224). His conclusion was fortified by reference to the practice followed by two major authorities then functioning, the Port of New York Authority and the Albany Port District Commission (id.).
That opinion is of particular significance in light of the inclusion of the merit and fitness provision in the 1938 Constitution without change., notwithstanding that the operation of public authorities was a topic of major concern at the 1938 Convention (Quirk & Wein, A Short Constitutional History of Entities Commonly Known As Authorities, 56 Cornell L Rev 521, 561-579). Significant also in light of the failure to modify the constitutional mandate is the Report of the Convention Committee which described public authorities as intended “to resemble in many respects a private business corporation * * * They operate on a business basis, and have complete control over the hiring and firing of employees and over their own organization and methods of operation” (11 Report of Constitutional Convention Committee, 1938, Problems Relating to Home Rule & Local Government, p 238 [emphasis supplied]).
The italicized language in that report must be understood as referring to authorities created by statute that did not expressly make the Civil Service Law applicable to the particular authority involved, for the Legislature had prior to 1938 directed that certain public authorities be governed by the provisions of that law (Temporary State Commission On Coordination of State Activities, Staff Report on Public Authorities Under New York State, NY Legis Doc, 1956, No. 46, p 158 [hereafter Temporary State Commission Report]). That practice has been followed by the Legislature ever since, the statute creating each authority usually stating that the Civil Service Law shall apply, but in a number of cases expressly providing otherwise, and in some cases containing no expression one way or the other.[1]
*369 c
There is no question that within the scope of its coverage, section 6 of article V, when adopted as part of the 1894 Constitution, was intended to extend civil service protections and reforms to a large number of government employees who had not been covered by prior civil service legislation (see Hale v Worstell, 185 NY 247; People ex rel. McClelland v Roberts, 148 NY 360; Constitutional Convention, at pp 836, 1030). That intent alone does not, however, suffice to include in its embrace agencies not properly classifiable as civil divisions of the State. Not only the practice detailed above, but also the characteristics of public authorities, establish their dissimilarity from civil divisions. Although all civil divisions are territorial subdivisions of the State, a public authority is not, and although a public authority may provide governmental service often provided by the State or a civil division, it is intended to operate with greater autonomy than permitted by the legal and procedural barriers to which civil divisions are subject (Temporary State Commission Report, at p 554). As we held in Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn. v New York State Thruway Auth. (5 NY2d 420, 423): “Although created by the State and subject to dissolution by the State, these public corporations are independent and autonomous, deliberately designed to be able to function with a freedom and flexibility not permitted to an ordinary State board, department or commission” (accord Matter of Dormitory Auth. [Span Elec. Corp.], 18 NY2d 114, 117; Matter of New York Post Corp. v Moses, 10 NY2d 199, 203-204).
Not surprisingly, therefore, not only has the Temporary State Commission concluded that public authorities are not subject to section 6 of article V of the Constitution (Report, pp 157-166), but also the Attorney-General having carefully reconsidered the matter has found no reason to modify his earlier opinion (1951 Opns Atty Gen 152) to the same effect. Moreover, courts passing upon the question *370 have ruled likewise (see Papa v Rovo, 70 AD2d 59, 65-66; Hyde Park Fire & Water Dist. v County of Dutchess, 97 Misc 2d 104, 106; Russell v Nassau Regional Off-Track Betting Corp., 94 Misc 2d 774, affd 70 AD2d 790; Matter of Agesen v Catherwood, 55 Misc 2d 744, 750, revd on other grounds 32 AD2d 416; Matter of Lorelli v Manhattan & Bronx Surface Tr. Operating Auth., 48 Misc 2d 944; Meadows v Moses, 44 NYS2d 697), and with but one exception[2] have construed the term “civil division” to cover only territorial subdivisions of the State created for the more convenient administration of government and empowered to exercise within their territorial boundaries powers which would otherwise be exercised by the State (Markey v County of Queens, 154 NY 675, 680; see Gaynor v Marohn, 268 NY 417, 422, supra; Herman v Board of Educ., 234 NY 196, 202, supra). We conclude, on the basis of the consistent history and precedent above outlined, that public authorities are not civil divisions within the meaning of the constitutional provision.
D
That conclusion does not mean, as plaintiffs’ in terrorem argument suggests, that the State will be able through use of public authorities to emasculate the constitutional provision. The command of section 6 of article V of the Constitution “is addressed to conventional and stable duties of the functionaries of civil government” and it aims “to supplant by a merit system a spoils system of office holding” (Matter of Social Investigator Eligibles Assn. v Taylor, 268 NY 233, 237). Such duties cannot be delegated by the Legislature to a public authority which is excluded from the civil service system. For example, the State police *371 could not be reconstituted as a public authority with power to hire officers and employees in disregard of the constitutional mandate (cf. Matter of Andresen v Rice, 277 NY 271). But for the most part public authorities have been created as a means of expanding government operations into areas generally carried on by private enterprise, areas not traditionally regarded as “conventional and stable duties * * * of civil government.”
Nor can the Legislature evade the requirement of section 6 of article V by creating a public authority which is completely controlled by the State or a civil division. The courts have been vigilant in scrutinizing arrangements under which the work formerly performed by employees within the constitutional provision is contracted out to private companies. And where the contractor’s employees are not independent of, but rather are controlled and supervised by government officials, such arrangements have been invalidated (see Matter of Conlin v Aiello, 49 NY2d 713, affg 64 AD2d 921; Matter of Westchester County Civ. Serv. Employees Assn. v Cimino, 44 NY2d 985, affg 58 AD2d 869; Matter of Turel v Delaney, 285 NY 16).
Ill
Examined in the light of the foregoing criteria, the Authority is not within the scope of the constitutional provision. It operates bus lines formerly owned by two private companies, which were acquired by New York City immediately before being transferred to the Authority[3] (see Public Authorities Law, § 1203-a, subds 2, 3, par [a]; see, also, Fifth Ave. Coach Lines v City of New York, 11 NY2d 342; Matter of Lorelli v Manhattan & Bronx Surface Tr. Operating Auth., 48 Misc 2d 944, supra). The work *372 performed by the employees represented by plaintiffs is, thus, more within the conventional duties of employees of private companies than it is of employees of the State or one of its civil divisions. The Authority is, moreover, clearly independent of the State and of New York City, for it appoints its own officers and employees, who are neither employees of the city nor members of the city employees’ retirement system (Public Authorities Law, § 1203-a, subd 3, par [b]), and whose work is in no way controlled by the city.[4]
Nor is it sufficient to bring the Authority within the scope of section 6 of article V that its employees are covered by the Public Employees’ Fair Employment Act (Civil Service Law, § 201, subd 6, par [a], cl [v]; subd 7, par [a]) and subject to its restraints on strikes and similar activities. That the Legislature included public authority employees within the Taylor Law’s ameliorative purposes does not require the conclusion that they are also employees of the State or “a civil division thereof” within the more restricted scope of the constitutional provision. That public authorities perform functions in furtherance of governmental interests does not mean, as already discussed, that all public authority employees are within the scope of section 6 of article V (cf. Grace & Co. v State Univ. Constr. Fund, 44 NY2d 84, 88; Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn. v New York State Thruway Auth., 5 NY2d 420, 423-425, supra).
IV
There remains for discussion the claim alleged in the third cause of action. Although the complaint speaks in terms of competitive examinations being “one of the terms and conditions of their employment with MABSTOA,” it does so not in terms of a provision of the employment contract (cf. Weiner v McGraw-Hill, Inc., 57 NY2d 458), but solely on the basis of estoppel. Only in most unusual circumstances, however, not present in this case, does *373 estoppel apply to require governmental action (see Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30; Matter of City of New York v City Civ. Serv. Comm., 60 NY2d 436, 439).
Nothing in the third cause, of action or elsewhere in the complaint suggests that plaintiffs seek to implicate the Taylor Law’s requirement that a public employer bargain with its employees before making a unilateral change in the terms and conditions of their employment (Civil Service Law, § 204, subd 2; § 209-a, subd 1, par [d]). We need do no more with respect to the discussion of the Taylor Law in the opinion below and the briefs submitted to us than note that such a claim would be committed to the “exclusive nondelegable jurisdiction” of the Public Employment Relations Board (Civil Service Law, § 205, subd 5, par [d]; Matter of Jefferson County Bd. of Supervisors v New York State Public Employment Relations Bd., 36 NY2d 534, 538; Matter of Corbin v County of Suffolk, 54 AD2d 698), and that any impediment to its considering the claim based upon the involvement of section 6 of article V of the Constitution is now resolved by this decision.
For the foregoing reasons, the order of the Appellate Division insofar as appealed from should be reversed, with costs, the first and third causes of action in the complaint should be dismissed and the question certified should be answered in the negative.
Chief Judge Cooke and Judges Jasen, Jones, Wacht-ler, Simons and Kaye concur.
Order, insofar as appealed from, reversed, etc.

. The appendix to the supplemental brief submitted by plaintiffs on reargument lists 104 public authorities and public benefit corporations created by provisions of the *369 Public Authorities Law or the Unconsolidated Laws, of which 72 are said specifically ■to provide that the Civil Service Law shall apply, seven, including that creating MABSTOA, are said specifically to exclude the entity from the civil service system, and 25, to make no provision one way or the other.

. (Matter of Mena v D‘Ambrose, 44 NY2d 428.) That case involved the New York City Transit Authority, which by statute (Public Authorities Law, § 1210, subd 2; see, also, § 1204, subd 6), is governed by the Civil Service Law. At issue was the four-year limitation established by section 56 of the Civil Service Law on the life of an eligibility list. The paramountcy of “constitutional concerns” was assumed without discussion (44 NY2d, at p 434). Matter of Corwin v Farrell (303 NY 61), also relied on by plaintiffs, may likewise be distinguished. Although the applicability of section 6 of article V to the New York City Housing Authority was involved and, therefore, the motion to dismiss the appeal was denied (303 NY, at p 69), the holding of the case was that neither constitutional mandate nor statutory enactment was violated by the contracting out of work formerly done by Authority employees. Whether the constitutional provision in fact applied does not appear to have been litigated (see 303 NY, at p 63; Palmer v Board of Educ., 276 NY 222, 228-229).

. The statute provides that the Authority is to operate the bus lines “for a temporary period” until they are “sold or otherwise disposed of to private or public operation” (Public Authorities Law, 8 1203-a, subd 2). When the Authority was created in 1962, the plan for temporary operation may well have been a factor in the Legislature’s decision to exclude Authority employees from the civil service system (see Matter of Lorelli v Manhattan & Bronx Surface Tr. Operating Auth., 48 Misc 2d 944, 948-949). As recently as 1981, however, the Legislature amended the statute to provide that the Authority “shall continue until terminated by law” (Public Authorities Law, § 1203-a, subd 11). In light of that amendment, without correlative change as to civil service status of Authority employees, we would exceed our function were we to conclude, as the Attorney-General suggests, that the “temporary” exclusion has outlived its purpose and should no longer be given effect. In our view the “temporary period” referred to in the original statute is irrelevant to our present determination.

. That the city’s Board of Estimate must approve the Authority’s bus routes (Public Authorities Law, § 1203-a, subd 3, par [f J) does not establish control of the employees. Indeed, every private franchisee operating within the city requires similar approval (Transportation Law, 8 80, subd 4; Administrative Code of City of New York, 8 362-1.0), and the Authority’s original mandate was to operate over the same routes previously approved for the private companies that it superseded.