In the Matter of the Arbitration between HUDSON VALLEY DISTRICT COUNCIL OF CARPENTERS, Respondent, and STATE OF NEW YORK, DEPARTMENT OF CORRECTIONAL SERVICES, Appellant.

Third Department, November 16, 1989

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (John Q. Driscoll* and *Nancy A. Spiegel* of counsel), for appellant.

*Blitman & King (James R. La Vaute* and *Alan R. Peterman* of counsel), for respondent.

### OPINION OF THE COURT

WEISS, J. P.

Petitioner, an association of local unions of the United Carpenters and Joiners of America, AFL-CIO, met with the Commissioner of Correctional Services to protest the use of inmates for construction work in progress at two correctional facilities. Petitioner contends that the Commissioner agreed to have some union carpenters employed in construction work at Camp Pharsalia Correctional Facility in Chenango County and Camp Summit Correctional Facility in Schoharie County. Petitioner also contends that the Commissioner stated that the Superintendents at those facilities had authority to enter into collective bargaining agreements on behalf of respondent. On September 23, 1987, the Superintendent at Camp Summit

signed an agreement to be bound by the same terms of an existing collective bargaining agreement between petitioner and the Construction Employers of the Hudson Valley, Inc. and also signed a memorandum setting forth the wage and fringe benefits to be effective for the period June 1, 1987 through May 21, 1990. On September 24, 1987, the Superintendent of Camp Pharsalia executed similar documents covering that facility. Thereafter, carpenters referred by petitioner were employed on work in progress at both facilities. On February 5, 1988, petitioner's attorney wrote to the Commissioner complaining that work covered by the collective bargaining agreement was being performed by inmates and non-union contractors in violation of the contract. By letter dated March 2, 1988, the Commissioner denied any commitment to enter into a collective bargaining agreement and stated neither Superintendent had authority to do so on behalf of respondent. Petitioner demanded resolution of the dispute pursuant to the binding arbitration clause in article 6 of the collective bargaining agreement. After the Commissioner reiterated his position that no collective bargaining agreement existed, petitioner commenced this proceeding pursuant to CPLR 7503 (a) for an order compelling arbitration. Respondent served a notice of objection in point of law and moved to dismiss the petition for its failure to establish a valid collective bargaining agreement or any valid agreement to arbitrate disputes between the parties.

Supreme Court held that respondent was a "public employer" within the definition of Civil Service Law § 201 (6) (a) (i) and (vi), with the Commissioner being the Department head and its chief executive officer (see, Correction Law § 5). Supreme Court further held that the Commissioner was empowered to enter into an agreement as defined by Civil Service Law § 201 (12), and that because the petition alleged that the Commissioner had delegated his authority to the prison Superintendents, grounds for relief were set forth. The court denied the motion to dismiss and granted respondent leave to serve an answer. This appeal ensued.

Respondent contends that there is no valid collective bargaining agreement as a matter of law since the public employer involved is the State as a whole and any agreement must involve the Governor as the State's chief executive officer. We agree.

Collective bargaining and labor relations between the State, local governments, and other political subdivisions and their

employees are governed by the Public Employees' Fair Employment Act (Civil Service Law art 14) (hereinafter the Taylor Law). The terms "government" and "public employer" for purposes of the Taylor Law are specifically defined by Civil Service Law § 201 (6) (a). The State is specifically identified and listed therein as a single unit. Respondent is an integral part of the government of this State which, by clear reading of Civil Service Law § 201 (6) (a), is not divided into subunits by the "catchall" found in section 201 (6) (a) (vi), which includes within the definition of public employer "any *other* public corporation, agency or instrumentality or unit of government which exercises governmental powers under the laws of the state" (emphasis supplied). The term "agency" is an indefinite and generic term covering a broad spectrum of governmental units *(see,* 2 NY Jur 2d, Administrative Law, § 16, at 28). Civil Service Law § 201 (6) (a) (i) through (v) lists specificities of whole units; to interpret clause (vi) as fractionalizing those units is contrary to the scheme of the Taylor Law *(see, Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept.,* 37 AD2d 437, 439). The general words do not overrule or render meaningless the particular words *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 238). Each word is presumed to have meaning and to have been inserted in a statute for a purpose, and must not be so read that one word will cancel out and render meaningless another word *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 231). The term "other" (Civil Service Law § 201 [6] [a] [vi]) is given its common meaning within the harmony of the statute *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 232).

The whole and unified nature of the State as a public employer is recognized in *Matter of Civil Serv. Employees Assn. v Helsby* (32 AD2d 131, *affd* 25 NY2d 842) when the five separate negotiating units for State employees were first established. Petitioner's interpretation would have the terms "public employer" and "chief executive officer" mean the "state" and "governor" for the bulk of the correctional services' public employees and mean the "commissioner" and "department" for purposes of petitioner's union members. This strained interpretation of the statute is contradicted by established State policy.

Executive Law article 24 establishes an Office of Employee Relations (hereinafter OER). Executive Law § 650 contains the State's policy statement relative to its relationship to its employees and states, in relevant part, that OER was created

"to assist the governor and *direct and coordinate* the state's efforts with regard to the state's powers and duties under the public employees' fair employment act" (emphasis supplied). Executive Law §§ 650 and 653 designate the Director of OER as the Governor's agent in discharging the powers and duties conferred upon the Governor by the Taylor Law. The Governor is the chief executive officer of the State *(see, Matter of Sanford v Rockefeller,* 35 NY2d 547, *appeal dismissed* 421 US 973).

An agreement is defined by Civil Service Law § 201 (12) as "the result of the exchange of mutual promises between the chief executive officer of a public employer and an employee organization". Since the Governor is the chief executive officer of respondent for purposes of the Taylor Law *(see, Matter of King v Carey,* 57 NY2d 505), an agreement without his participation or that of his statutory agent, the Director of OER, is not an agreement under the Taylor Law.

■ Moreover, an "employee organization" as defined in Civil Service Law § 201 (5) is required to have "as its primary purpose the improvement of terms and conditions of employment of public employees". In turn, "a public employee" is defined in Civil Service Law § 201 (7) (a) as "any person *holding* a position * * * in the service of a public employer" (emphasis supplied). The petition in this proceeding alleged that petitioner was representing *prospective* employees to be referred by petitioner.

■ Assuming that respondent's Commissioner and his prison Superintendents proceeded as alleged, the agreements were not entered into as required by the Public Employees' Fair Employment Act because those persons were without legal authority to negotiate and execute a collective bargaining agreement on behalf of the State. Absent a valid collective bargaining agreement containing an arbitration clause, the petition fails and respondent may not be compelled to arbitrate the dispute.

■ Petitioner's contention that respondent should be estopped from denying statutory authority to enter into a binding collective bargaining agreement is without merit. There is neither a manifest injustice *(cf., Eden v Board of Trustees,* 49 AD2d 277, 283-284) nor an unusual factual situation to warrant an exception to the established doctrine that equitable estoppel does not generally apply to governmental activities *(see, Collins v Manhattan & Bronx Surface Tr. Operating Auth.,* 62 NY2d 361, 372-373).

YESAWICH, JR., J. (dissenting). I respectfully dissent and vote to affirm.

"Public employer", as defined by Civil Service Law § 201 (6) (a), encompasses a number of entities including "(i) the state of New York" and "(vi) any other * * * agency or instrumentality or unit of government which exercises governmental powers under the laws of the state". To construe public employer to mean the State of New York as a single unit which includes the subunits of the State reads clause (vi) out of the statute and renders this language meaningless, in contravention of established principles of statutory construction (see, McKinney's Cons Laws of NY, Book 1, Statutes § 231).

In my view, respondent is a public employer within the reach of clause (vi) of Civil Service Law § 201 (6) (a). It is unquestionably an agency of the State (see, Executive Law § 661), one which the Court of Appeals has implicitly recognized to be an employer for purposes of the Taylor Law (see, Van Vlack v Ternullo, 53 NY2d 1003, 1004), one which this court has found to be a public employer for purposes of the Human Rights Law (Matter of New York State Dept. of Correctional Servs. v McCall, 111 AD2d 571, 572) and one which clearly exercises governmental powers (see, New York Inst. for Educ. of Blind v United Fedn. of Teachers' Comm. for N. Y. Inst., 83 AD2d 390, 400, affd 57 NY2d 982). Accordingly, the Commissioner of Correctional Services, being the chief executive officer (Correction Law § 5) of a public employer, was empowered to enter into negotiations and agreements with petitioner (see, Civil Service Law § 204 [1]; § 201 [12]). His alleged statement to petitioner authorizing two facility Superintendents to enter into the collective bargaining agreements on behalf of respondent, for the purpose of retaining persons who apparently are neither full-time employees of the State nor represented by any of the five negotiating units recognized in Matter of Civil Serv. Employees Assn. v Helsby (32 AD2d 131, affd 25 NY2d 842), constrains respondent to arbitrate pursuant to those agreements.

MIKOLL, MERCURE and HARVEY, JJ., concur with WEISS, J. P.; YESAWICH, JR., J., dissents and votes to affirm in an opinion.

Order reversed, on the law, without costs, motion granted and petition dismissed.