[622 NYS2d 718]

TIMOTHY L. NICKELS, Individually and as President of the Police Benevolent Association, Inc., Housing Police Department, City of New York, Respondent, v NEW YORK CITY HOUSING AUTHORITY et al., Appellants.

First Department, February 16, 1995

### APPEARANCES OF COUNSEL

*Paul A. Crotty, Corporation Counsel* of New York City *(Leonard Koerner, Elizabeth Dvorkin, James J. Dwyer, Robert Katz* and *Spencer Fisher* on the brief), for City of New York, appellant.

*Jeffrey Schanback* for New York City Housing Authority and others, appellants.

*Theodore C. Richman* of counsel *(Solomon Richman Greenberg, P. C. [Harry Greenberg* and *Robert J. Burzichelli];* and *Heyward & Hilton, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

WILLIAMS, J.

The issue on this appeal is whether or not the Civil Service Law authorizes a merger of the New York City Housing Authority Police Department and the New York City Police Department such that the Housing Authority officers' jobs, civil service status, seniority, and pension benefits will be protected from impairment.

On September 9, 1994, the New York City Housing Authority (NYCHA) voted to transfer all civilian and uniformed members of its Police Department (HAPD) to the New York City Police Department (NYPD). On the same day, Mayor Giuliani signed Executive Order No. 13, providing that effec-

tive October 1, 1994 or as soon as possible thereafter, the NYPD would assume the functions of the HAPD, and ordering the City Personnel Director and the Police Commissioner to take all necessary steps to transfer the HAPD work force to the NYPD. The City and the Housing Authority incorporated the terms of the merger in a Memorandum of Understanding executed on September 16, 1994 providing for a Housing Bureau within the NYPD, that all HAPD officers and employees would be transferred without changes in their permanent civil service status and without loss of seniority, and that every uniformed officer could elect to transfer pension service credits from the New York City Employees' Retirement System to the Police Pension Fund-Subchapter 2.

On September 27, 1994, a Memorandum of Understanding was entered into between the Mayor and the "Council of the City of New York by the Speaker" authorizing merger of the NYPD, HAPD, and Transit Authority Police Department under certain conditions. The Housing Authority submitted the plan to the United States Department of Housing and Urban Development (HUD), which on September 13, 1994 approved the transfer of Housing Authority funds for security, but called for a public hearing on the merger. A Congressional subcommittee held a public hearing on September 19, 1994 at which witnesses such as the Mayor, NYPD Commissioner, Housing Authority Commissioner, Chief of the Housing Police, union representatives, tenant representatives, and residents spoke. The subcommittee requested that HUD monitor the merger to ensure compliance with public housing protections.

On the same day, petitioner moved by order to show cause to enjoin respondents from transferring HAPD officers on the grounds that the Housing Authority was not empowered to do so under New York Civil Service Law § 70 (2), arguing that the Housing Authority was not a civil division of the State and that to effectuate the transfer of personnel, respondent must obtain legislative action to avoid violating the rights of the personnel, that the transfer of payroll records would be an imminent danger to HAPD officers and their families due to mishandling of personal information, and the HAPD officers would lose pension benefits. A temporary restraining order was denied by Justice Martin Evans. The City and Housing Authority answered, explaining the merger and actions taken to approve it, and contending that it was authorized by law.

On October 1, 1994, the IAS Court initially issued a preliminary injunction barring the involuntary transfer to allow

itself additional time to consider the issues. Thereafter, the court granted the petition and permanently enjoined the involuntary transfer of HAPD officers to the NYPD and the dissemination of payroll information regarding the officers to other agencies or governmental units, and directed the return of any information already disseminated. The court found, *inter alia,* that the Housing Authority could not invoke Civil Service Law § 70 (2) because it applied to civil divisions of the State and the Housing Authority was not a civil division, as per the Court of Appeals in *Collins v Manhattan & Bronx Surface Tr. Operating Auth.* (62 NY2d 361). The court also stated that the Legislature had added other subdivisions to section 70 with regard to "authorities" without amending subdivision (2), which evidenced legislative intent not to cover public authorities under section 70 (2). The court also found that the merger would result in impairment of pension rights. Respondents appealed.

▇ Stated more specifically, the issue here is whether or not Civil Service Law § 70 (2) governs this proposed merger of the police functions of the NYPD and the HAPD, where the Public Housing Law mandates that the Civil Service Law is applicable to Housing Authority employees, including police officers, but section 70 (2) itself, in listing the governmental entities to which it applies, fails to specifically include "authorities" within its ambit. This issue is complicated by the fact that other subdivisions of Civil Service Law § 70 refer specifically to New York City, "authorities", and/or mergers of police departments and are, at least arguably, applicable. It is our opinion, however, that these subdivisions are not applicable to the matter at issue.

"The civil service provisions of the Constitution and of the statutes, including section 16 of the Civil Service Law relating to * * * transfers, were intended as a protection for the public, civil service employees, and their individual security" *(Matter of Friedman v Kern,* 171 Misc 332, 334, citing *Wood v City of New York,* 274 NY 155). The current Civil Service Law provision governing voluntary and involuntary transfers of civil service employees between various State agencies and entities is section 70. Section 70 (2) states in relevant part as follows:

"Transfer of personnel upon transfer of functions. Upon the transfer of a function (a) from one department or agency of the state to another department or agency of the state, or (b) from one department or agency of a civil division of the state

to another department or agency of such civil division, or (c) from one civil division of the state to another civil division of the state, or (d) from a civil division of the state to the state, or vice versa, provision shall be made for the transfer of necessary officers and employees who are substantially engaged in the performance of the function to be transferred."

Pursuant to this provision, the City Council, the Mayor, and the Housing Authority undertook the various agreements and procedures noted above in order to implement their proposed transfer of the Housing Authority's police function to the NYPD. In their view, this Civil Service Law mandate is imposed upon them by the Public Housing Law, part of the body of law governing the Housing Authority. The Public Housing Law states in relevant part as follows:

"§ 32. Officers and employees; compensation and expenses

"1. * * * An authority * * * may employ, *subject to the provisions of the civil service law* applicable to the municipality in which it is established, [various employees] as it may require" (emphasis added).

"§ 402. Special provisions with respect to the New York City Housing Authority * * *

"5. * * * [T]he New York city housing authority shall have the power in its discretion to provide and maintain a housing police department and a uniformed housing police force * * * *Appointments to such housing police force shall be made in accordance with applicable provisions of the civil service law"* (emphasis added).

The Court of Appeals has held that while "authorities" are not "civil divisions", the Legislature may enact laws which subject these authorities to the Civil Service Law *(Collins v Manhattan & Bronx Surface Tr. Operating Auth.,* 62 NY2d 361, 368-370, *supra),* and that via the Public Housing Law the Legislature has made the Civil Service Law applicable to the Housing Authority *(Matter of Driscoll v Troy Hous. Auth.,* 6 NY2d 513, 520-521, *rearg denied* 7 NY2d 755). The fact that some sections of the Civil Service Law specifically refer to "authorities", and others state that they apply to the State and its civil divisions without mentioning authorities, does not gainsay the fact that the Public Housing Law makes the whole of the Civil Service Law applicable to the Housing Authority. As the Court of Appeals stated in *Driscoll (supra,* at 520-521): "The purpose of section 32 of the Public Housing Law is to *make* applicable * * * 'the provisions of the civil

service law applicable to the municipality in which it is established'. Such provisions *are already* applicable to [entities listed in the Civil Service Law] without any assistance from the Public Housing Law. If we were to hold that the Civil Service Law continues to apply only to [entities listed in the Civil Service Law] despite an express legislative instruction that its provisions govern a *Housing Authority* as well, we would have to hold that each different denomination of administrative agency to which the Legislature wished to apply civil service provisions would have to have a separately enacted body of them distinct from the present Civil Service Law. Such holding is untenable, and does violence to the plain words of section 32 of the Public Housing Law." (Emphasis in original.)

Inasmuch as we find that the Public Housing Law makes the Civil Service Law applicable to the Housing Authority, and does not exclude the applicability of any section of the Civil Service Law to the Housing Authority, all sections, including section 70 (2), are applicable. We now address petitioner's assertions that other subdivisions of Civil Service Law § 70 bar or, in the alternative, govern, the proposed merger.

Petitioner argues that Civil Service Law § 70 (5) specifically prohibits the transfer of HAPD personnel to the NYPD. Section 70 (5) states:

"5. (a) Where, because of economy, consolidation or abolition of functions, curtailment of activities or otherwise, a police department of any county, city, town, village, district, commission, authority or public benefit corporation is dissolved or abolished and the functions of such department are assumed by another police agency by contractual agreement or payment or taxation therefor, the provisions of this section shall apply.

"(b) For the purposes of this subdivision:

"(1) The term 'police agency' shall mean any agency or department of a county, city * * * authority or public benefit corporation having responsibility for enforcing the criminal laws of the state.

"(2) The term 'police agency' or 'police department' shall not be construed to include the police department of a city of one million or more persons, the police department of a housing authority of a city of one million or more persons, or the police department established pursuant to the provisions of section one thousand two hundred four of the public authorities law."

■ While this subdivision does specifically exclude from its scope the NYPD, the HAPD, and the New York City Transit Authority Police Department, it does not *prohibit* the transfer of HAPD personnel to the NYPD.

Subdivision (5)'s legislative history indicates that its intended purpose was to provide protection for the jobs, civil service status, and pension benefits of police officers and that its impact would most likely be felt where small town and village police departments disbanded or merged with those of surrounding towns or counties (see, Bill Jacket, L 1989, ch 483, at 19 [NY St Conf of Mayors], 31 [NY St Assn of Counties]). Prior to the amendment, officers of a disbanded department would have been in danger of losing their jobs, civil service status, and benefits because the governmental body assuming the police function was not required to accept the transfer of personnel from the disbanded department. As stated by the General Counsel of the New York State Civil Service Commission in the Bill Jacket:

"This proposal would enact a new subdivision five to Civil Service Law § 70, which would broaden the existing scope of that section to mandate that when a locality abolishes its police force, and another political subdivision assumes the responsibility by contract or by default, the newly responsible political subdivision would be bound to accept the transfer of the staff of the defunct department, pursuant to Civil Service Law § 70 (2), with full seniority within the newly responsible department, and possibly with leave credits previously accrued."

"*Where the transfer of responsibility is a formal one, by legislation or formal agreement between the political subdivisions, the newly responsible jurisdiction is already legally bound to accept necessary staff of the defunct agency, pursuant to Civil Service Law § 70 (2)* * * *

"*The situations apparently intended to be covered by this proposal do not involve a responsibility voluntarily assumed by a political subdivision, with full acceptance of the resulting staffing consequences*" (Bill Jacket, L 1989, ch 483, at 12-13 [emphasis added]).

Thus the legislative history indicates that subdivision (5) was not intended to apply to a situation like the one before us, where two State entities enter an agreement to merge their police functions and the "newly responsible jurisdiction", i.e., New York City, voluntarily and fully accepts the "resulting

staffing consequences". Such situation was understood to be already covered under section 70 (2).

Respondents correctly cite an additional source of authority for the transfer of functions contemplated here. The Rules of the New York City Personnel Director govern the Housing Authority and its Police Department, and have "the force and effect of law" (Civil Service Law § 20 [2]). Rule 6.1.2 (59 RCNY Appendix A) also provides full civil service protection for personnel transferred pursuant to a transfer of functions between agencies.

■ Contrary to petitioner's urgings, Civil Service Law § 70 (6) does not provide for the transfer of function contemplated here. This subdivision governs the involuntary transfer of "personnel" between "city agencies", which was expressly defined to include public authorities, and states that when such a transfer is contemplated in New York City, it may be accomplished by negotiated agreement between the City and the employee organization. Section 70 (1) expressly distinguishes between subdivision (6) and subdivision (2), which governs transfers of functions. The proposed merger involves a transfer of an entire function between agencies, i.e., one agency will no longer perform police work, whereas a transfer of "personnel" refers to individual employees, and the agencies involved would both continue to perform the function. Section 70 (2), therefore, is the applicable provision between the two, and it does not impose the requirement of a negotiated agreement with the employee organization before a transfer of functions can be accomplished.

■ We also find that the IAS Court erred in holding that the proposed merger would impair the HAPD officers' pension rights in violation of New York State Constitution, article V, § 7. Although the HAPD officers are members of the New York City Employees' Retirement System (NYCERS) and NYPD officers are members of the Subchapter 2 Police Pension Fund (PPF), transferring the HAPD officers to the PPF will not cause a diminution in their pension and related rights.

By way of background, it should be understood that NYCERS is an umbrella system which administers a variety of plans for uniformed and civilian employees. Administrative Code of the City of New York § 13-156, which sets forth the HAPD pension plan, provides that HAPD officers are entitled to the same rights and benefits as the members of the PPF,

and then proceeds to incorporate by reference all of the substantive pension benefit provisions included in the PPF, making the two plans substantially identical (Administrative Code § 13-156 [i] [2]).

The fact of this substantial identity defeats the petitioner's major objection to the merger with reference to pension rights. The petitioner argues that the transfer of the HAPD officers' pension rights will be subject to the so-called "three-year rule" set forth at Retirement and Social Security Law § 43 (d). This rule, if applicable, would impose a three-year waiting period on retirement of transferees before they can retire with the benefits of the new pension system. It acts as a deterrent to employees transferring to a new pension fund on the eve of retirement solely to obtain better benefits. However, since the benefits of the HAPD and the NYPD are the same, this rule, even if applicable, would be of no consequence. Moreover, the rule is not applicable in this instance because a transfer between these two pension funds is not among those listed as covered under Retirement and Social Security Law § 43 (see, subd [a]), and in any case, the transfer of pension rights is to be achieved pursuant to Administrative Code § 13-143, which does not contain or incorporate Retirement and Social Security Law § 43 (d)'s three-year rule. As a result, HAPD officers would receive full pension credit immediately upon transfer.

■ Petitioner also argues that benefits to HAPD officers from the Police Pension Fund's Police Officer's Variable Supplements Fund would be diminished due to our decision in *Matter of Duffy v Dinkins* (190 AD2d 619). However, that decision related to *voluntary* transfers of officers to the NYPD pursuant to the Lateral Transfer Law (L 1991, ch 675), which did not provide for retention of seniority, leaving the issue subject to applicable law, i.e., Administrative Code § 13-271, which allowed diminution of rights under those circumstances. The *involuntary* transfer at issue, to which we find Civil Service Law § 70 (2) applies, would thereby be insulated from the results in *Duffy*, since section 70 (2) provides that transferred officers are entitled to "full seniority credit for all purposes" for service prior to transfer.

Petitioner's other benefits-related objection to merger, that Housing Authority Police Officer's Variable Supplements Fund (the Fund) payments would be disrupted after a merger, is also without merit. Pursuant to Administrative Code § 13-191 (3) (f) (see, L 1994, ch 719, § 3), as of January 1, 1994

payment of the Fund benefits is an obligation of New York City, guaranteed by the City. Also, should the HAPD's Police Benevolent Association (the PBA) cease to exist, the Fund can continue to operate and make payments. An annual schedule of payments is already set out at Administrative Code § 13-191 (4) (c) (1) and requires no additional action by the Fund's Board of Trustees for payment to take place *(see,* L 1993, ch 375). Alternatively, should board action be necessary, the board may act by the vote of its remaining three trustees, or the PBA's successor in interest could assume its position on the board *(see,* Administrative Code § 13-191 [3] [c]).

Accordingly, the order of Supreme Court, New York County (Carol H. Arber, J.), entered October 20, 1994, in an action for declaratory judgment and injunctive relief, enjoining: the involuntary transfer of any police officers from the New York City Housing Authority Police Department to the New York City Police Department; the dissemination or distribution of any payroll information for any police officer of the Housing Authority to any agency or governmental unit as those terms are defined in the New York State Public Officers Law; and directing respondents to demand and obtain the return of any such documentation from any governmental entity or individual to whom such information has been delivered, is unanimously reversed, on the law, without costs, the injunction and directive vacated, and a judgment granted in favor of respondents declaring that Civil Service Law § 70 (2) authorizes, without need of further legislative action, the transfer of the police function and officers of the New York City Housing Authority to the New York City Police Department such that the Housing Authority officers' jobs, civil service status, and pension, retirement, and seniority benefits will not be impaired.

*Sua sponte* leave to appeal to the Court of Appeals is hereby granted.

KUPFERMAN, J. P., Ross and TOM, JJ., concur.

Order, Supreme Court, New York County, entered October 20, 1994, reversed, on the law, without costs, the injunction and directive vacated, and a judgment granted in favor of respondents declaring that Civil Service Law § 70 (2) authorizes, without need of further legislative action, the transfer of the police function and officers of the New York City Housing

Authority to the New York City Police Department such that the Housing Authority officers' jobs, civil service status, and pension, retirement, and seniority benefits will not be impaired. *Sua sponte* leave to appeal to the Court of Appeals is hereby granted.