OPINION OF THE COURT
Stanley L. Sklar, J.
RELIEF SOUGHT
Petitioners commenced this CPLR article 78 proceeding seeking (1) a declaration that New York City Charter § 1127 is unconstitutional as applied to all petitioners in this action who, as former members of the Police Department (TP) of the New York City Transit Authority (Transit) and the Police Department (HP) of the New York City Housing Authority (Housing), were merged into the New York City Police Department (NYPD) pursuant to Civil Service Law § 70 (2); (2) an order enjoining respondent, Department of Finance (Finance), from implementing and enforcing New York City Charter § 1127 as applied to petitioners who, as former TP and HP members, were merged into the NYPD pursuant to Civil Service Law § 70 (2); and (3) directing Finance to refund all amounts that the City of New York (the City) withheld from petitioners’ paychecks, pursuant to New York City Charter § 1127, from April 2, 1995, to the date of final judgment with notice of entry, together with interest, costs, disbursements, and reasonable attorneys’ fees.
Housing cross-moves, pursuant to CPLR 3211, for dismissal of the proceeding as against it for failure to state a cause of action.
The declaratory judgment action of Lieutenants’ Benevolent Assn. v City of New York (index No. 120323-95) is consolidated for decision. That action was argued before the court on December 9, 1996, and all counsel agreed that the issues are precisely the same as in Matter of Ganley v Giuliani. In Lieutenant’s Benevolent Assn., the plaintiffs move for an order declaring that the wage deductions made by the City are unconstitutional and illegal. The defendants cross-move for summary judgment.
*657 BACKGROUND
In 1995, the City merged the HP and the TP into the NYPD. The legality of the mergers is no longer an issue.[1] This action addresses a by-product of those mergers; namely, whether the City can lawfully deduct a nonresident tax payment from petitioners’ paychecks.
On September 9, 1994, Housing’s board passed a resolution authorizing the City to merge the HP into the NYPD. On September 16, 1994, Housing and the City entered into a memorandum of understanding (Housing MOU) to implement Housing’s merger resolution. On January 27, 1995, the board of the Metropolitan Transit Authority (MTA) passed a resolution authorizing the City to merge the TP into the NYPD. On March 31, 1995, the MTA, Transit, and the City entered into a memorandum of understanding (Transit MOU) to implement MTA’s merger resolution.
On April 2, 1995 and April 30, 1995, the City merged the TP and the HP, respectively, into the NYPD, pursuant to article 5 of the Civil Service Law (Civil Service Law § 70 [2] ["Transfer of personnel upon transfer of functions”]). As a result of the merger, approximately 7,367 uniformed HP and TP employees and approximately 461 civilian HP and TP employees were combined with the then approximately 29,943 NYPD uniformed personnel for a single police force.
New York City Charter § 1127 requires every person seeking employment with the City to sign an agreement, as a condition precedent to City employment, that if such person resides, or changes residence to, outside of the City during the employment period, such person will pay the City an amount equivalent to what would have been paid in income tax if such person lived within City limits.
Petitioners (petitioners hereafter includes the plaintiffs in Lieutenants’Benevolent Assn. v City of New York), permanently appointed civil servants, were transferred to the NYPD in the mergers. At the relevant times, all petitioners resided outside of the City and are considered City nonresidents. Prior to the mergers, petitioners were not City employees and, therefore, they were not subject to the condition of employment payment. Upon transfer to the NYPD, Finance began deducting from petitioners’ paychecks the amount that they would have been assessed if petitioners resided within the City as a condition of employment payment, pursuant to New York City Charter § 1127.
*658 In a prior action, Timothy Nickels, individually and as president of HP’s Police Benevolent Association, sought to prevent the proposed merger of the HP into the NYPD by arguing that Civil Service Law § 70 (2) was inapplicable to the Housing Authority. That challenge resulted in the decision entitled Nickels v New York City Hous. Auth. (208 AD2d 203 [1995], ajfd 85 NY2d 917, supra). In Nickels, the First Department held that Civil Service Law § 70 (2) authorizes the transfer of the HP’s police function and personnel to the NYPD without further legislative action. A separate challenge to the merger of the TP into the NYPD was dismissed by the IAS Court assigned to that matter.
Petitioners here argue that respondents’ action is arbitrary and capricious and that petitioners are being denied their property without due process of law because they have not consented to or authorized the paycheck deduction. Petitioners also argue that State statute (Civil Service Law § 70 [2]) prohibits the City’s action.
Respondents contend that New York City Charter § 1127 applies to all nonresident City employees and that petitioners were notified that, as City employees, they are subject to section 1127 as a condition of employment. Respondents argue further that, by commencing their City employment and cashing paychecks, they have impliedly accepted the City’s employment conditions.
DETERMINATION
The standard of review for an article 78 proceeding is whether the agency determination was arbitrary or capricious or affected by an error of law. (Matter of Colton v Berman, 21 NY2d 322.) The court’s function, essentially, is to determine rationality. (Matter of Pell v Board of Educ., 34 NY2d 222.) Respondents’ determination — that petitioners are not exempt from the City’s nonresident employment condition contained in New York City Charter § 1127 — complies with controlling statutory authority and is rational. In addition, respondents have demonstrated substantive compliance with section 1127 as to petitioners and plaintiffs. Thus, the petition and the complaint are dismissed.
New York City Charter § 1127
Petitioners’ request for a declaration that New York City Charter § 1127 is unlawful as applied to them is denied. New York City Charter § 1127 (a) ("[condition precedent to employ *659 ment”) provides: "Notwithstanding the provisions of any local law, rule or regulation to the contrary, every person seeking employment with the city of New York or any of its agencies regardless of civil service classification or status shall sign an agreement as a condition precedent to such employment to the effect that if such person is or becomes a nonresident individual as that term is defined in section 11-1706 of the administrative code of the city of New York or any similar provision of such code, during employment by the city, such person will pay to the city an amount by which a city personal income tax on residents computed and determined as if such person were a resident individual, as defined in such section, during such employment, exceeds the amount of any city earnings tax and city personal income tax imposed on such person for the same taxable period.”
Respondents’ determination, that petitioners, as City employees, are subject to section 1127 is neither arbitrary nor capricious; that determination is consistent with legislative intent in enacting section 1127 and it is intended to prevent the unfairness of a two-tiered agency in which the employment condition would be applicable to some nonresident NYPD employees but not to others.
First, it is settled that the employment condition contained in New York City Charter § 1127 does not constitute an unlawful tax on a nonresident City employee because the payment is founded upon contract. (Matter of Legum v Goldin, 55 NY2d 104 [construing NY City Charter former § 822, the original enactment of the statute].) A tax is not founded on contract but is levied by a governmental authority upon its citizens. (Matter of Legum v Goldin, supra, at 107, citing Lane County v Oregon, 7 Wall [74 US] 71, 80.) The provision here insures a "certain equality between the take-home pay of City employees who reside within the five boroughs and those who live outside the City limits”. (Korenyi v Department of Sanitation, 699 F Supp 388, 398 [ED NY 1988] [construing NY City Charter former § 822].)
Second, petitioners’ argument that they are not persons "seeking employment with the City” is unpersuasive to establish that petitioners are not subject to the employment condition. The general rule, that statutes are to be construed according to the ordinary meaning of words, is not to be mechanically applied if such interpretation causes an absurd or futile result, especially, as is the case here, where it conflicts with legislative policy and purposes. (Matter of Jose R., 83 NY2d 388, 393; United States v Hendrickson, 26 F3d 321 [2d Cir 1994].)
*660 The petitioners voluntarily sought City employment. At most, the statutory phrase — "every person seeking employment” — could be viewed as ambiguous in the context of the transferred employees. A statute that can be interpreted in different, but reasonable, ways is sufficiently ambiguous to warrant a court to consider legislative history to determine the statute’s intended scope. (United States v Pacione, 738 F2d 567 [2d Cir 1984].) New York City Charter § 1127’s history reveals the legislative intent to apply the condition precedent to all nonresident City employees hired after the statute’s effective date. In recommending that the City Council adopt the employee condition, the committee stated: "Signing the aforesaid agreement would be a condition precedent to employment of all future City employees regardless of civil service classification or status.” (1972 Report of Comm on Finance, at 936 [emphasis added].) Committee reports are persuasive authority of legislative intent. (Railway Labor Executives’ Assn. v Interstate Commerce Commn., 735 F2d 691, 701 [2d Cir 1984] [context of congressional report].) Petitioners have not provided any authority, nor is the court aware of any, that supports a contrary interpretation of New York City Charter § 1127’s legislative intent.
Third, the State law that governs the mergers’ impact on the transferred personnel does not prohibit the City from invoking the employment condition. To be sure, as involuntary transferees, petitioners are afforded greater rights than that of voluntary transferees. (Nickels v New York City Hous. Auth., 208 AD2d, supra, at 212, citing Matter of Duffy v Dinkins, 190 AD2d 619.) However, as discussed more fully below, the protection does not extend to the nonresidency payment at issue here.
State Statute — Civil Service Law § 70 (2)
Civil Service Law § 70 (2) governs the mergers’ impact on transferred personnel. (Nickels v New York City Hous. Auth., 208 AD2d, supra, at 209.) Petitioners argue that the State statute conflicts with New York City Charter § 1127 and, therefore, it precludes respondents from enforcing the condition precedent upon petitioners. They contend that the condition precedent is an impermissible "qualification”, and adversely affects "seniority” and "status”. This argument is unpersuasive. Civil Service Law § 70 (2) does not address terms and conditions of employment. It provides, in relevant part: "Officers and employees so transferred shall be transferred without further examination or qualification, and shall retain their respective *661 civil service classifications and status.” (Civil Service Law § 70 [2] [emphasis added].)
The merger did not impair civil service status and pension, retirement, and seniority benefits. (Nickels v New York City Hous. Auth., 208 AD2d, supra, at 213.) Petitioners commenced their City employment by keeping their existing civil service titles and are credited with the seniority that they accumulated as employees of the Housing and Transit Authorities. Significantly, the transferees who were hired by either Housing or Transit prior to January 4, 1973, receive the same exemption as the NYPD employees hired prior to that date.
The nonresident tax employment condition is neither a "further examination or qualification”, nor a change in "civil service classification and status” as those terms are used in the context of the Civil Service Law. The payment is not a "qualification” of employment because it does not alter any of the qualifications for police officers that are set forth in the notice of examination. (See, Watts v McGuire, 102 Misc 2d 711, affd 81 AD2d 791, lv denied 55 NY2d 603.) The imposition of a condition does not require a competitive examination and it is neither a promotion nor a demotion within the title because the condition does not involve new skills or tasks. (Matter of Kitchings v Jenkins, 204 AD2d 158, affd 85 NY2d 694.)
Petitioners also contend that the condition precedent adversely affects their "rights” and "privileges”. Assuming, arguendo, that the condition precedent does adversely affect a right or privilege, such fact does not violate Civil Service Law § 70 (2). Civil Service Law § 70 (2) specifically refers to "examination”, "qualification”, "classification” and "status” without any reference to "rights” and "privileges”. A court must infer that what the Legislature omitted was not intended. (GTE Spacenet Corp. v New York State Dept. of Taxation & Fin., 223 AD2d 468, lv denied 88 NY2d 814.)
That the State Legislature did not intend to encompass "rights” and "privileges” when it enacted Civil Service Law §70 (2) is revealed by those numerous other statutes that specifically utilize these terms. (See, e.g., Arts and Cultural Affairs Law § 20.37 ["Officers and employees so transferred shall not lose their civil service status or rights”]; ECL 29-0305 [2] ["officers and employees of state departments and agencies may be transferred * * * without examination and without loss of any civil service status or rights”]; Private Housing Finance Law § 45 [same]; Public Authorities Law § 552-a [8] ["All employees of the original authorities shall become em *662 ployees of the consolidated authority. Nothing in this title shall affect the civil service status of such employees or their rights, privileges, obligations or status with respect to any pension or retirement system”].)
Petitioners also argue that the Transit and Housing MOU’s are enforceable contracts and they incorporate the terms of Civil Service Law § 70 (2), i.e., that the transferees would not incur any loss of civil service status, seniority, or benefits. Respondents deny that any of the MOU terms have been breached and argue further that, because petitioners are not parties to either MOU, they have no breach of contract claims. The court need not reach the issue of whether petitioners have a breach of contract claim because their reliance upon the Housing and Transit MOU’s, to avoid the employment condition, is misplaced. As previously discussed, Civil Service Law §70 (2) does not prohibit enforcement of New York City Charter § 1127. The MOUs do not provide any greater rights than that contained in the state statute.[2]
Enforcement of New York City Charter § 1127
Petitioners also seek an order (1) enjoining Finance from continuing to withhold the nonresidency tax payment from their paychecks and (2) directing Finance to refund all amounts that the City previously withheld. Petitioners have the burden of demonstrating that they are entitled to this affirmative relief. (Matter of Grossman v Rankin, 43 NY2d 493.) For the reasons set forth below, petitioners have not met their burden.
Petitioners contend that they have not consented to the condition precedent to NYPD employment authorizing the deduction of the condition of employment payment from their salaries and they have not signed a "condition of employment agreement”. This argument is unconvincing as a means of avoiding compliance with the employment condition.
To be sure, respondents did not follow the literal language of New York City Charter § 1127. Generally, statutes are to be applied in accordance with the plain meaning of the language contained therein and the court’s purpose is not to pass on the statute’s wisdom but, rather, to implement the legislative will as expressed in its enactment. (People v Ryan, 82 NY2d 497.) *663 In rare cases, however, a literal application of a statute will produce a result demonstrably at odds with the drafters’ intentions. In these cases, the legislative intent, rather than the strict language, controls. (Tomka v Seiler Corp., 66 F3d 1295, 1313-1314 [2d Cir 1995].) Such a case is presented here.
As previously discussed, the legislative intent of New York City Charter § 1127 was that it would apply to "all future employees”. Prior to the mergers, the TP and HP employees received notices stating: "Your acceptance of employment with the City of New York ('City’) upon transfer from the New York City [Housing] [Transit] Authority shall constitute your agreement, pursuant to section 1127 of the New York City Charter, that if you are or become a nonresident of the City at any time during your City employment, you will pay to the City the equivalent of the personal income tax that you would owe if you were a City resident. This notice does not apply to you if you have been continuously employed by the New York City Housing Authority from January 4, 1973 to the date of your transfer.” It was agreed at oral argument that all transferees in fact received the notice.
Respondents’ assertion, that the City Council did not consider in 1973 when it amended the New York City Charter to add section 1127 (formerly § 822), the effect of a mass transfer of employees, is accurate. In the instance of an individual applicant seeking City employment, the writing referred to in New York City Charter § 1127 ensures that the applicant has knowingly agreed to be taxed as a City resident.
Here, however, petitioners are not individual job applicants but members of a large group that have accepted the employment condition by accepting City employment with knowledge of the condition. Here, we have the unique circumstance that the parties agree that all petitioners in fact received the notices and then, nonetheless, entered upon their new employment with the New York City Police Department. Moreover, as previously discussed, the City employment did not adversely affect status, classification, or require further examination or qualification.
The many means by which one may enter into an agreement increases as modern technology expands. For example, even as to an individual seeking employment with the City, the individual’s assent to the provisions of New York City Charter § 1127 on videotape would presumably be regarded as the equivalent of a signed writing. The touchstone inquiry remains the same. Did petitioners agree to abide by the provisions of *664 New York City Charter § 1127? Under the unique circumstances presented here, where it is uncontroverted that all transferees received the notice, and voluntarily accepted the benefits of the City employment, petitioners have effectively assented to be taxed as if they were residents of the City. By reporting for duty as members of the NYPD after having received the notices, they confirmed their agreement to abide by the provisions of section 1127. Petitioners cannot now avoid the consequences of that agreement, either by the institution of this proceeding or, in the instance of some of the petitioners, by endorsing their paychecks with the legend "under protest”.
Petitioners have not met their burden of demonstrating that the City’s determination — based upon the unusual scenario presented here — to notify petitioners of the condition and advise that their acceptance of City employment shall constitute their agreement pursuant to section 1127, rather than demand a signed agreement, was arbitrary or capricious. The City is not exercising its sovereign authority to impose a tax on petitioners without their consent. (Matter of Legum v Goldin, 55 NY2d 104, supra.) Instead, the City is obtaining this payment based upon the employee’s voluntary acceptance of City employment.
Housing’s motion for dismissal of the Ganley proceeding as against it is granted. Housing is not a necessary party. Indeed, petitioners are not seeking any relief against Housing. Housing no longer employs or pays petitioners or takes any deduction from their pay. More importantly, as previously discussed, petitioners have failed to demonstrate that respondents have violated the Housing MOU.
Accordingly, the petition is dismissed. The plaintiffs’ motion in Lieutenants’ Benevolent Assn, is denied and the cross motion for summary judgment is granted.

. Nickels v New York City Hous. Auth., 208 AD2d 203, affd 85 NY2d 917.

. The Transit MOU provides, in relevant part: "Except as provided in Sections 7 and 8 of this MOU, all sworn members of the TAPD shall be transferred without any change in permanent civil service status and without loss of civil service seniority.” (II.5 [a].)
The Housing MOU contains substantially the same language (II.6 [a]).