OPINION OF THE COURT
Edward H. Lehner, J.
*328 The central issue in this CPLR article 78 proceeding is whether the City of New York (the City) acted arbitrarily and capriciously in applying New York City Charter (the Charter) § 1127 to certain previously exempt emergency medical service (EMS) personnel who were transferred from the New York City Health and Hospitals Corporation (HHC) to the Fire Department of the City of New York (FDNY).
FACTS
The HHC "is a public benefit corporation, independent of the City of New York (L 1969, ch 1016, § 1 [New York City Health and Hospitals Corporation Act, § 4, subd 1])” (Brennan v City of New York, 59 NY2d 791, 792 [1983]; see, McKinney’s Uncons Laws of NY § 7381 et seq.). Pursuant to the New York City Health and Hospitals Corporation Act (L 1969, ch 1016), in 1970 the City transferred its municipal hospitals to the HHC.
Charter § 1127 (previously numbered § 822), adopted on January 4, 1973 (Local Laws, 1973, No. 2 of City of New York), provides as follows: "a. Notwithstanding the provisions of any local law, rule or regulation to the contrary, every person seeking employment with the city of New York or any of its agencies regardless of civil service classification or status shall sign an agreement as a condition precedent to such employment to the effect that if such person is or becomes a nonresident individual as that term is defined in section 11-1706 of the administrative code of the city of New York or any similar provision of such code, during employment by the city, such person will pay to the city an amount by which a city personal income tax on residents computed and determined as if such person were a resident individual, as defined in such section, during such employment, exceeds the amount of any city earnings tax and city personal income tax imposed on such person for the same taxable period.”
Although the City Corporation Counsel opined in a 1973 letter that the section was applicable to HHC employees in that HHC was an "agency” of the City, HHC did not then concur with this position and thus did not then apply its provisions to any of its employees.
In a change of policy, on October 26, 1982 HHC issued a memorandum declaring that the section would be applied to any HHC employee hired on or after November 1, 1982 and to all then current employees who moved out of the City after that date. However, in February 1985 HHC reversed that position with respect to its EMS employees who were hired prior *329 to November 1, 1982 and who subsequently moved outside of the City and it directed a refund of any deductions already imposed on such employees. On April 4, 1989, the HHC issued a further memorandum specifically limiting section 1127’s impact on Group 12 EMS nonmanagerial employees and applied the Charter provision only to such employees hired on or after November 1, 1982 who were nonresidents on their date of hire or who later moved out of the City. Petitioners, Group 12 nonmanagerial EMS employees hired prior to November 1, 1982, were therefore exempted from section 1127 via the April 4, 1989 memorandum and continued to have such exemption until the transfers discussed herein.
In October 1995 a bill was introduced to amend the Charter to authorize the FDNY to operate an emergency and prehospital ambulance system. An October 26, 1995 HHC Board of Directors resolution authorized its president to effectuate a transfer of the EMS employees to the FDNY. HHC and the City then negotiated the terms and conditions of the change and on January 19, 1996 the parties signed a memorandum of understanding to transfer the EMS functions pursuant to Civil Service Law § 70 (2). Finally, on February 15, 1996 the bill authorizing the transfer was passed by the City Council, and on February 26, 1996 Mayor Guiliani signed the bill as Local Laws, 1996, No. 20 of the City of New York (adding NY City Charter § 487 [f]) and issued an Executive Order directing the FDNY to assume ambulance and prehospital emergency medical service functions on March 17, 1996. On that day the transfer took place and the EMS became the Bureau of Emergency Medical Service of the FDNY and approximately 3,250 HHC employees became FDNY employees.
On July 15, 1996, District Council 37 filed an improper practice petition with the New York City Office of Collective Bargaining charging that by applying section 1127 to petitioners, respondents improperly unilaterally imposed a new condition of employment upon their employ without the union’s agreement. Petitioners simultaneously commenced this proceeding in which they seek a judgment: (1) declaring that the City acted arbitrarily and capriciously and in contravention of law by enforcing section 1127 in violation of Civil Service Law § 70 (2) and Charter § 1143; (2) declaring that the City’s action is an unconstitutional impairment of contract and deprivation of property in violation of the Due Process Clauses of the New York and United States Constitutions; (3) directing reimbursement of all moneys deducted via enforcement of sec *330 tion 1127; and (4) directing the City to cease any further deductions thereunder.
Petitioners contend that a further qualification was added as a result of the transfer via the imposition of an employment condition under section 1127. They also contend that a loss of seniority benefits occurred because they were treated as new employees and thus lost their section 1127 exemption in violation of Civil Service Law § 70 (2). Respondents contend that petitioners were not subject to new qualifications as a result of the enforcement of section 1127 upon transfer, but were instead only subject to new terms and conditions of City employment which is not protected by section 70 (2), and that the EMS employees commenced employment with the FDNY without any change in civil service status or seniority and without further qualification.
DISCUSSION
The standard of review in this proceeding is whether the determination to enforce section 1127 upon petitioners was "made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]). The " 'judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.’ ” (Ostrer v Schenck, 41 NY2d 782, 786 [1977]; see also, Pell v Board of Educ., 34 NY2d 222, 231 [1974].)
The Court of Appeals has ruled that section 1127 is not a tax, but an enforceable term and condition of employment with the City acting in its capacity as an employer, stating that it "is clear beyond cavil that the payments due to the City of New York are owed as a result of the contract entered into by the petitioner with the city and not as a result of an exercise by the city of its taxing authority” (Matter of Legum v Goldin, 55 NY2d 104, 108 [1982]).
Civil Service Law § 70 (2) provides, in pertinent part, as follows: "Upon the transfer of a function (a) from one department or agency of the state to another department or agency of the state, or (b) from one department or agency of a civil division of the state to another department or agency of such civil division, or (c) from one civil division of the state to another civil division of the state, or (d) from a civil division of the state to the state, or vice versa, provision shall be made for the transfer of necessary officers and employees who are substantially engaged in the performance of the function to be transferred *331 * * * Officers and employees so transferred shall be transferred without further examination or qualification, and shall retain their respective civil service classifications and status * * * Officers and employees transferred to another governmental jurisdiction pursuant to the provisions of this subdivision shall be entitled to full seniority credit for all purposes for service rendered prior to such transfer in the governmental jurisdiction from which transfer is made.”
Longevity increments were determined by the Court of Appeals to be protected seniority rights in the interpretation of a town law that was similar to Civil Service Law § 70 (2) because the rights were found to be "substantial pecuniary benefits related to length of service.” (Matter of Town of Mamoroneck PBA v New York State Pub. Empl. Relations Bd., 66 NY2d 722, 725 [1985].) In Nickels v New York City Hous. Auth. (208 AD2d 203, 212 [1st Dept 1995], affd 85 NY2d 917 [1995]), it was held that the phrase "full seniority credit for all purposes” in Civil Service Law § 70 (2) protected involuntarily transferred police officers against any diminution of pension rights.
In order to ascertain whether petitioners’ exemption is a benefit protected upon transfer, we must look to the legislative intent underlying Civil Service Law § 70 (2). " '[A] primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature,’ and in 'finding such purpose, one should look to the entire statute, its legislative history and the statutes of which it is made a part’ ”, (Association of Surrogates & Supreme Ct. Reporters v State of New York, 78 NY2d 143, 151 [1991], quoting Rankin v Shanker, 23 NY2d 111, 114 [1968].) " 'The civil service provisions of the Constitution and of the statutes * * * relating to * * * transfers, were intended as a protection for the public, civil service employees, and their individual security’ ” (Nickels v New York City Hous. Auth., supra, at 207).
In Matter of Ganley v Guiliani (171 Misc 2d 654), Justice Sklar of this court held that the imposition of section 1127 on employees who became New York City Police Department officers when the Police Departments of the New York City Transit Authority and the New York City Housing Authority were merged into the City Police Department did not violate section 70 (2). There, relevant officers had never been subject to section 1127 because, as opined by the Corporation Counsel in 1973, neither of said authorities was an "agency” of the City. In ruling that section 70 (2) was not violated, Justice Sklar stated that the "nonresident tax employment condition is nei *332 ther a 'further examination or qualification’, nor a change in 'civil service classification and status’ as those terms are used in the context of the civil service law” (at 661).
Although there were no additional qualifications placed on EMS petitioners via the imposition of section 1127, this court finds that the City disregarded their seniority benefits when applying this Charter provision to them. Petitioners had previously been granted exempt status by HHC. The exemption is a "substantial pecuniary benefit” based on a combination of petitioners’ status as Group 12 HHC employees and their many years of service with that agency. Petitioners’ exemption from section 1127, as a protected benefit, is supported by the Legislature’s intention in adopting Civil Service Law § 70 (2) to protect employee rights upon transfer. The guarantee in section 70 (2) of "full seniority credit for all purposes for service rendered prior to such transfer” includes all financial benefits resulting from years of service. Exemption from section 1127 is one of such benefits even though here it only flows to nonresidents of the City. It is a pecuniary benefit enjoyed for years by petitioners of which they should not be deprived merely because of an administrative transfer of functions. Thus, while the conclusion herein will result in nonuniformity in the income taxation of EMS employees based on residence, that has been true in the past and, even if a contrary ruling were issued, nonuniformity would exist as employees hired prior to the enactment of section 1127 remain exempt from its provisions.
Contrasted with the police officers in Matter of Ganley v Guiliani (supra), here the original employer agency had specifically granted the relevant employees an exemption from the imposition of section 1127 based on their period of service. It was not, therefore, just a case (as with the police officers) of an inapplicable statute, but rather it was a benefit bestowed as a consequence of being declared exempt by their employer due to seniority. The respondents’ actions were accordingly in conflict with law as well as arbitrary and capricious as the application of section 1127 to these particular employees is in violation of protections provided by Civil Service Law § 70 (2).
In light of the foregoing, the court need not consider petitioners’ other arguments. Accordingly, a judgment shall be entered declaring that (1) enforcement of section 1127 against the EMS petitioners and other similarly situated employees is in violation of Civil Service Law § 70 (2); (2) directing respondents to reimburse petitioners and other similarly situated previously *333 exempt EMS employees for all money deducted pursuant to the enforcement of section 1127 from the date of the transfer; and (3) directing respondents to cease any further deductions pursuant to said section from such employees.